# BALDWIN COUNTY WELCOME CENTER *v.* BROWN

No. 83–181.   Decided April 16, 1984

148

PER CURIAM.

On November 6, 1979, respondent Celinda Brown filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging discriminatory treatment by her former employer, petitioner Baldwin County Welcome Center (Welcome Center). A notice of right to sue was issued to her on January 27, 1981. It stated that if Brown chose to commence a civil action "such suit must be filed in the appropriate United States District Court within ninety days of [her] receipt of this Notice."[1] Later, Brown mailed the notice to the United States District Court, where it was received on March 17, 1981.[2] In addition, she requested appointment of counsel.

On April 15, 1981, a United States Magistrate entered an order requiring that Brown make application for court-appointed counsel using the District Court's motion form and supporting questionnaire. The Magistrate's order to Brown reminded her of the necessity of filing a complaint within 90 days of the issuance of the right-to-sue letter. The questionnaire was not returned until May 6, 1981, the 96th day after receipt of the letter. The next day, the Magistrate denied Brown's motion for appointment of counsel because she had not timely complied with his orders, but he referred to the District Judge the question whether the filing of the right-to-sue letter with the court constituted commencement of an action within the meaning of Rule 3 of the Federal Rules of Civil Procedure. On June 9, 1981, the 130th day after receipt of the right-to-sue letter, Brown filed an "amended complaint," which was served on June 18.

On December 24, 1981, the District Court held that Brown had forfeited her right to pursue her claim under Title VII of

---

[1] The presumed date of receipt of the notice was January 30, 1981. Fed. Rule Civ. Proc. 6(e).

[2] Brown mailed the letter to the United States District Court for the Middle District of Alabama. The case was transferred to the Southern District of Alabama, however, because the events giving rise to the charge had occurred there.

the Civil Rights Act of 1964 because of her failure to file a complaint meeting the requirements of Rule 8 of the Federal Rules of Civil Procedure within 90 days of her receipt of the right-to-sue letter. It noted that the right-to-sue letter did not qualify as a complaint under Rule 8 because there was no statement in the letter of the factual basis for the claim of discrimination, which is required by the Rule.

The Court of Appeals for the Eleventh Circuit reversed, holding that the filing of a right-to-sue letter "tolls" the time period provided by Title VII. Judgment order reported at 698 F. 2d 1236 (1983). Although conceding that its interpretation was "generous," the court stated that "[t]he remedial nature of the statute requires such an interpretation." The court then stated that the filing of the right-to-sue letter "satisfied the ninety day statutory limitation."

The Welcome Center petitioned for a writ of certiorari from this Court. We grant the petition and reverse the judgment of the Court of Appeals.

The section of Title VII at issue here states that within 90 days after the issuance of a right-to-sue letter "a civil action may be brought against the respondent named in the charge." 86 Stat. 106, 42 U. S. C. § 2000e–5(f)(1). Rule 3 of the Federal Rules of Civil Procedure states that "[a] civil action is commenced by filing a complaint with the court." A complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). The District Court held that the right-to-sue letter did not satisfy that standard. The Court of Appeals did not expressly disagree, but nevertheless stated that the 90-day statutory period for invoking the court's jurisdiction was satisfied, apparently concluding that the policies behind Title VII mandate a different definition of when an action is "commenced."[3] However, it identi-

---

[3] Neither the parties nor the courts below addressed the application of Rule 15(c) to the "amended complaint" filed on June 9. That Rule provides that amendment of a pleading "relates back" to the date of the original

fied no basis in the statute or its legislative history, cited no decision of this Court, and suggested no persuasive justification for its view that the Federal Rules of Civil Procedure were to have a different meaning in, or were not to apply to, Title VII litigation. Because we also can find no satisfactory basis for giving Title VII actions a special status under the Rules of Civil Procedure, we must disagree with the conclusion of the Court of Appeals.[4]

With respect to its apparent alternative holding that the statutory period for invoking the court's jurisdiction is "tolled" by the filing of the right-to-sue letter, the Court of

---

pleading. We do not believe that Rule 15(c) is applicable to this situation. The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide. 3 J. Moore, Moore's Federal Practice ¶ 15.15[3], p. 15–194 (1984). Although the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley* v. *Gibson,* 355 U. S. 41, 47 (1957). Because the initial "pleading" did not contain such notice, it was not an original pleading that could be rehabilitated by invoking Rule 15(c).

[4] JUSTICE STEVENS makes much of a letter dated March 21, 1981, sent by Brown to the District Court in which she describes the basis of her claim. Suffice it to say that no one but the dissent has relied upon this letter to sustain Brown's position. There is nothing in the record to suggest that the letter was considered by the District Court or the Court of Appeals, and Brown does not rely upon it before this Court as a basis for affirming the judgment. The issue before the Court of Appeals and before this Court is whether the filing of a right-to-sue letter with the District Court constituted the commencement of an action. The Court of Appeals held that it did and based its judgment on that ground. We reverse that judgment. Even if respondent had relied on the letter in this Court, we would not be required to assess its significance without having the views of the lower courts in the first instance.

JUSTICE STEVENS also suggests that we should be more solicitous of the pleadings of the *pro se* litigant. It is noteworthy, however, that Brown was represented by counsel at the time of the dismissal by the District Court, before the Court of Appeals, and before this Court. Neither Brown nor her counsel ever requested that the letter in the record be construed as a complaint.

Appeals cited no principle of equity to support its conclusion.[5] Brown does little better, relying only on her asserted "diligent efforts." Nor do we find anything in the record to call for the application of the doctrine of equitable tolling.

The right-to-sue letter itself stated that Brown had the right to sue within 90 days. Also, the District Court informed Brown that "to be safe, you should file the petition on or before the ninetieth day after the day of the letter from the EEOC informing you of your right to sue." Finally, the order of April 15 from the Magistrate again reminded Brown of the 90-day limitation.

This is not a case in which a claimant has received inadequate notice, see *Gates* v. *Georgia-Pacific Corp.*, 492 F. 2d 292 (CA9 1974); or where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon, see *Harris* v. *Walgreen's Distribution Center*, 456 F. 2d 588 (CA6 1972); or where the court has led the plaintiff to believe that she had done everything required of her, see *Carlile* v. *South Routt School District RE 3–J*, 652 F. 2d 981 (CA10 1981). Nor is this a case where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction. See *Villasenor* v. *Lockheed Aircraft Corp.*, 640 F. 2d 207 (CA9 1981); *Wilkerson* v. *Siegfried Insurance Agency, Inc.*, 621 F. 2d 1042 (CA10 1980); *Leake* v. *University of Cincinnati*, 605 F. 2d 255 (CA6 1979). The simple fact is that Brown was told three times what she must do to preserve her claim, and she did not do it. One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.

Brown also contends that the doctrine of equitable tolling should apply because the Welcome Center has not demonstrated that it was prejudiced by her failure to comply with

---

[5] It is not clear from the opinion of the Court of Appeals for how long the statute is tolled. Presumably, under its view, the plaintiff has a "reasonable time" in which to file a complaint that satisfies the requirements of Rule 8. See *Huston* v. *General Motors Corp.*, 477 F. 2d 1003 (CA8 1973). In this case, it was another 84 days until such a complaint was filed.

the Rules.[6]   This argument is unavailing.   Although absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify such tolling is identified, it is not an independent basis for invoking the doctrine and sanctioning deviations from established procedures.

Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.   As we stated in *Mohasco Corp.* v. *Silver*, 447 U. S. 807, 826 (1980), "in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."

The petition for certiorari is granted, respondent's motion to proceed *in forma pauperis* is granted, and the judgment of the Court of Appeals is reversed.

*It is so ordered.*


JUSTICE STEVENS, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, dissenting.

Whenever this Court acts summarily, there is an increased risk that it will make a mistake.   Without the benefit of full briefs and oral argument, an important issue may escape our attention.   The case the Court decides today involves possible violations of two time limitations imposed by Congress. The first—a jurisdictional limitation—simply escapes the at-

---

[6] Brown also contends that application of the doctrine of equitable tolling is mandated by our decision in *Zipes* v. *Trans World Airlines, Inc.*, 455 U. S. 385 (1982).   In *Zipes*, we held that the requirement of a timely filing of a charge of discrimination with the EEOC under 42 U. S. C. § 2000e–5(e) is not a jurisdictional prerequisite to a suit in district court and that it is subject to waiver and equitable tolling.   Brown's argument is without merit, for we did not in *Zipes* declare that the requirement need not ever be satisfied; we merely stated that it was subject to waiver and tolling. There was neither waiver nor tolling in this case.

tention of the Court; the second, which is subject to tolling, is misapplied by the Court because its review of the record is so cursory.

Like the Court, I am firmly convinced that "'in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law,'" *ante,* at 152 (quoting *Mohasco Corp.* v. *Silver,* 447 U. S. 807, 826 (1980)). The Court does not, however, follow that teaching in this case. A rather full statement is necessary to explain the extent of the Court's departure from the controlling procedural requirements.

I

In 1979, respondent charged that her former employer had discriminated against her on account of her race in a complaint filed with the Equal Employment Opportunity Commission (EEOC). The EEOC ultimately sent respondent a right-to-sue letter, dated January 27, 1981. The letter stated that more than 180 days had elapsed since the Commission assumed jurisdiction, that the Commission had not filed a suit, and that respondent had specifically requested the notice of the right to sue regarding her "Charge Against Baldwin County Welcome Center No. 042800149." 1 Record 1. It also stated in part:

"If you choose to commence a civil action, such suit must be filed in the appropriate United States District Court within 90 days of your receipt of this Notice. If you are unable to retain an attorney, the Court is authorized *in its discretion* to appoint an attorney to represent you and to authorize commencement of the suit without payment of fees, costs, or security. In order to apply for an appointed attorney, you should, *well before the expiration of the above 90-day period,* take this Notice, along with any correspondence you have received from the Justice Department or the Equal Employment Opportunity Commission, to the Clerk of the United States

154

District Court in Montgomery." *Ibid.* (emphasis in original).

On March 16, respondent called the Clerk's office in the District Court in Montgomery, Alabama. Pursuant to that conversation, she immediately sent her notice, along with correspondence, to the court with a request for appointed counsel. *Id.*, at 1–3, 5. On March 18, a Deputy Clerk sent a letter to respondent, telling her that if "you wish to proceed with this matter" sign and have notarized the enclosed *in forma pauperis (ifp)* affidavit and motion for appointment of counsel and return the forms "immediately as time is a factor in filing this matter." *Id.*, at 4. The letter noted that respondent should include any other documents she had concerning the matter. On March 21, respondent returned the *ifp* affidavit and had typed onto the affidavit a request for a court-appointed attorney. *Id.*, at 13. She also sent a letter, marked to the attention of "Counselor or Attorney & District Clerk" in which she made a short and plain statement of her claim. *Id.*, at 10–12. Though a portion of the relevant language—perhaps significant language—is missing from the copy of the letter contained in the record, the letter alleged that the Baldwin County Welcome Center had caused her to be fired, described the harm it had caused her, alleged (after the missing language) ". . . worked on this job. None of the other workers were subjected to this type of hardship and inconveniences," and described "another example of how I was ill treated." *Id.*, at 11. At the end of her letter, she stated that her appointed attorney should note that "I am asking or seeking monetary damages, as well as hardship damages, damages done to my credit ratings, . . . as the well as the damages done to my character, and intellect, and whatever he may see to be justice in my behalf. Thank You!" *Id.*, at 12. The *ifp* affidavit and the letter were received by the District Court on March 24, and apparently docketed on March 30. Judge Varner granted respondent leave to proceed *in forma pauperis* on March 30. *Id.*, at 13.

On April 6, Judge Varner *sua sponte* transferred the case to the Southern District of Alabama because it was obvious to him that the Southern District was more convenient for all parties.   *Id.*, at 15.   He transferred the case, captioned *Brown* v. *Baldwin County Welcome Center*, Misc. No. 1324, pursuant to 28 U. S. C. § 1404(a), which permits a district court to transfer any "civil action" to any other district where it might have been brought.   The following day, Judge Varner sent respondent a letter, explaining that the "case" had been transferred, and further stating that under "the law" she had 90 days after the date of the EEOC letter to file a "petition" in the transferee court.   1 Record 16.   He noted that on "some occasions" the letter she had written requesting appointment of counsel could be considered as "your petition for relief . . . within the 90-day time," but stated "to be safe, you should file the petition" within the 90-day period. *Ibid.*   He also noted that he was calling the transferee court's "attention to the fact that you have asked that the court appoint you an attorney."   *Ibid.*   Judge Varner also sent a letter to the Clerk of the Southern District explaining the situation.   Though relevant language is again missing from the copy of this letter in the record, the letter states that respondent had been granted leave to proceed *in forma pauperis* and that she had requested the appointment of counsel.   *Id.*, at 15.

The case, now *Brown* v. *Baldwin County Welcome Center*, Civil Action No. 81–0241–H, was referred to a Magistrate, who on April 15 *sua sponte* issued an "order" requiring "plaintiff" to "appear in the Clerk's office as soon as practicable" to complete a questionnaire regarding appointment of counsel, and stating: "Plaintiff is reminded that a complaint must be filed within ninety (90) days after the date of the Notice of Right to Sue, and that time is of the essence."   1 Record 17.   The order also stated that the questionnaire would have to be completed "well in advance" of that time, "because a lawsuit cannot necessarily be drafted in a short

time by a lawyer who has no advance notice of the case."
*Ibid.* Thus, the order continued, if the questionnaire were
not completed "in time for a reasoned decision to be made on
time," the motion could be denied, and the order indicated
that the motion could be denied in any event, and hence
"plaintiff would be well advised to approach the Legal Serv-
ices Corporation and any other legal aid office on her own to
see if she can obtain representation." *Id.*, at 18. On May 2,
respondent filled out another *ifp* affidavit, signed a motion
for appointment of counsel, and completed an accompanying
information sheet, which were all file stamped May 6. *Id.*,
at 19–23. On the information sheet, she explained she had
contacted a legal aid office in Tennessee, which had referred
her to two Florida offices, "and their response was they were
filled up with cases." *Id.*, at 23.

In an order entered on May 7, the Magistrate denied the
motion for appointment of counsel. The Magistrate ob-
served at the outset that under applicable Fifth Circuit cases,
he should consider

> "'the merits of the plaintiff's claim, the plaintiff's efforts
> to obtain counsel, and the plaintiff's financial ability to
> retain counsel.'

> "In doing so Courts are required to 'be sensitive to the
> problems faced by *pro se* litigants and innovative in their
> responses to them.'

> "From this array of factors, it is necessary to consider
> only one: 'the plaintiff's efforts to obtain counsel,'
> namely, failure timely to comply with the order dated
> April 15, 1981." *Id.*, at 25–26 (footnotes citing cases
> omitted).

After this innovative display of sensitivity to the problems
encountered by *pro se* litigants, the Magistrate stated that
the 90-day limitation period was jurisdictional, citing *Prophet
v. Armco Steel, Inc.*, 575 F. 2d 579 (CA5 1978), and then
turned to the "next question . . . whether plaintiff's
motion should be denied for untimely compliance with the

order dated April 15, 1981." In analyzing that question, he sketched the procedural history of the case, noting that it had been transferred under 28 U. S. C. § 1404(a), and opined: "To say the least it is not clear whether this is now a 'case' or not." 1 Record 28 (footnote omitted). The Magistrate then observed that notwithstanding the April 15 order, plaintiff did not file the motion for appointment of counsel for three weeks—almost a week after the 90th day. He concluded:

> "If the filing of the right-to-sue letter is 'filing of a complaint with the court' within the meaning of Rule 3 of the Federal Rules of Civil Procedure, this is a case in which the 'complaint' can be amended. If it is not, of course, this file is not a lawsuit. That question is one for the district judge.
>
> "In either event, the motion for appointment of counsel is DENIED for failure timely to comply with the order dated April 15, 1981." *Id.*, at 29.

On June 9, an attorney filed a notice of appearance on behalf of respondent, along with another *ifp* affidavit, and an "amended complaint." *Ifp* status was again granted, by Judge Hand, on June 15. The amended complaint itself contained fewer facts than the respondent's March 21 letter, but did contain many legal conclusions, assertions, and citations, asserting claims under 42 U. S. C. § 2000e and 42 U. S. C. § 1981, among other statutes and constitutional provisions. It was also, of course, denominated a complaint. Hence, on June 16, a summons was finally issued, and was served on petitioner on June 18. 1 Record 39–40. The State of Alabama Bureau of Publicity and Information, the agency which operated the Baldwin County Welcome Center, filed an answer on July 8, "reserv[ing] the right to present a Statute of Limitations bar to this suit if discovery should reveal that the suit was not brought within 90 days of the issuance of the EEOC 'right to [s]ue' letter." *Id.*, at 42. Discovery commenced, and a trial was scheduled for the week of January 18, 1982. *Id.*, at 46–47.

On December 24, apparently *sua sponte*, though apparently after obtaining briefing by the parties, see *id.*, at 72, Judge Hand entered an order stating at the outset:

> "The issue before the Court is whether a pro se plaintiff can commence an employment-discrimination suit under 42 U. S. C., § 2000e by merely filing a copy of a right-to-sue letter issued by the United States Department of Justice. For the reasons below, the Court holds that in this case the simple filing of the right-to-sue letter was inadequate to commence a civil action under 42 U. S. C., § 200[0]e–5(f)(1)." *Id.*, at 67.

The court found it "especially significant that the right-to-sue letter . . . wholly fails to indicate the factual basis upon which the alleged claim of discrimination was based," and stated that the "sole function served by the notice issued in this case is to notify the plaintiff that if she chooses to commence a civil action 'such suit must be filed in the appropriate United [S]tates District Court within ninety days of [her] receipt of this Notice.'" *Ibid.* The court found the notice to be "crystal clear" in indicating "a further step" would be required "to file a civil action," and stated that the "plain language of 42 U. S. C. § 2000e–5(f)(1) and Fed. R. Civ. P. 3 demonstrate that a right-to-sue letter is not equivalent to a complaint." *Id.*, at 68.

The court considered itself confronted with conflicting authority on the issue before it: *Wrenn* v. *American Cast Iron Pipe Co.*, 575 F. 2d 544 (CA5 1978) (holding that presenting right-to-sue letter and requesting appointment of counsel satisfies 90-day limitation period) (opinion by Roney, J.); *Prophet* v. *Armco Steel, Inc.*, *supra (per curiam)* (stating that the statute requires a "complaint" to be filed within 90 days); and *Nilsen* v. *City of Moss Point*, 621 F. 2d 117 (CA5 1980) (stating that the statute requires that civil actions be "commenced" within 90 days) (opinion by Roney, J). Although the latter cases did not suggest that

the respective plaintiffs had presented their right-to-sue letters and requested appointment of counsel within the 90-day time period, the District Court viewed the latter cases as representing the "better view" in requiring that a complaint be filed within the time period. 1 Record 68 The court concluded that "[a]t the very minimum, the accusatory instrument should contain a short and plain statement of the factual basis upon which the claim rests," and that "the plaintiff has forfeited her right to pursue her Title VII claim because of her failure to file a complaint which meets the requirements of Rule 8 of the Federal Rules of Civil Procedure within ninety days after receiving her right-to-sue letter . . . ." *Ibid.* The court noted, however, that the amended complaint contained claims which were not time-barred, and observed that the case could be pretried on January 13, 1982, as originally scheduled.

On January 5, 1982, pursuant to a motion filed by respondent's counsel, the court amended its December 24 order, see Fed. Rule App. Proc. 5(a), to include a statement permitting an interlocutory appeal pursuant to 28 U. S. C. § 1292(b), stating that the controlling question of law was "whether the filing of an EEOC right-to-sue letter with the Court of appropriate jurisdiction tolls the 90-day limitation provided for in 42 U. S. C. § 2000e–5(f)(1)." 1 Record 70. The court also stayed all proceedings in the case until the Court of Appeals acted. *Id.*, at 71. On January 13, respondent filed a notice of appeal and a statement of issues on appeal in the District Court. *Id.*, at 76, 77. The issue on appeal was framed as follows: "Whether under the facts of this case plaintiff's filing of an EEOC right-to-sue letter with a court of appropriate jurisdiction tolls the 90-day limitation period provided for in 42 U. S. C. § 2000e–5(f)(1)." *Id.*, at 77.

Then, nothing happened. Nothing happened because respondent had not filed a petition in the Court of Appeals within the 10-day period required by 28 U. S. C. § 1292(b) and Federal Rule of Appellate Procedure 5(a). On Septem-

ber 29, 1982—nine months after the interlocutory appeal was certified—respondent moved the District Court "to supplement" its previous order of December 24, as amended on January 5, to permit filing the interlocutory appeal which was time-barred. Petitioner opposed the motion, citing *Alabama Labor Council* v. *Alabama*, 453 F. 2d 922 (CA5 1972), Fed. Rule App. Proc. 26(b), Fed. Rules Civ. Proc. 6 and 60(b), as precluding an enlargement of the time for filing the interlocutory appeal.

The District Court reentered its previous order on October 5, citing *Aparicio* v. *Swan Lake*, 643 F. 2d 1109 (CA5 1981) as authority for permitting a new interlocutory appeal. 1 Record 86. Respondent filed a petition in the Court of Appeals on October 8, and the United States Court of Appeals for the Eleventh Circuit, viewing the Fifth Circuit's decision in *Aparicio* as binding authority under its decision in *Bonner* v. *City of Prichard*, 661 F. 2d 1206 (CA11 1981) (en banc), granted permission for the interlocutory appeal. 2 Record, Doc. No. 2. The appeal was submitted on the briefs without oral argument on January 27, 1983, and four days later the Court of Appeals reversed in a four-page unpublished opinion on the basis of the Fifth Circuit's decision in *Wrenn*. Judgment order reported at 698 F. 2d 1236 (1983). Petitioner's petition for rehearing, filed February 18, was denied on April 8, with no member of the court requesting a response to the petition or a vote on the suggestion for rehearing en banc.

Petitioner filed its petition for a writ of certiorari on July 7. Respondent chose not to respond to the petition, but this Court requested a response on September 23 and respondent filed a brief in opposition to the petition on October 22, 1983. The Court now summarily reverses the judgment of the Court of Appeals after relating a brief sketch of the procedural history of the case.

## II

A threshold jurisdictional question must be addressed to determine whether the Court of Appeals and hence this

Court lack appellate jurisdiction over the order raising the question which the District Court apparently framed *sua sponte* (ignoring the effect of the March 21 letter filed by respondent) and certified for interlocutory review (notwithstanding the other claims arising out of the same nucleus of operative facts which were not time-barred and were set for trial).

Title 28 U. S. C. § 1292(b) and Federal Rule of Appellate Procedure 5(a) require that a petition be filed in the Court of Appeals within 10 days of the date the interlocutory order was certified by the District Court. It is well settled that the 10-day time limit for filing a petition in the Court of Appeals is mandatory and jurisdictional.[1] The jurisdictional question in this case is whether the 10-day time limitation imposed by § 1292(b) and Federal Rule of Appellate Procedure 5(a), a time period which may not be enlarged, Fed. Rule App. Proc. 26(b), can be circumvented by simply reentering the interlocutory order for the sole purpose of extending the time for filing the petition. There is a conflict in the Circuits on this jurisdictional question, compare, *e. g.*, *Woods* v. *Baltimore & Ohio R. Co.*, 441 F. 2d 407, 408 (CA6 1971) *(per curiam)*, and *Nakhleh* v. *Chemical Construction Corp.*, 366 F. Supp. 1221, 1222–1223 (SDNY 1973), with *Aparicio* v.

---

[1] *E. g.*, *General Television Arts, Inc.* v. *Southern R. Co.*, 725 F. 2d 1327, 1330 (CA11 1984); *Nuclear Engineering Co.* v. *Scott*, 660 F. 2d 241, 245–248 (CA7 1981), cert. denied *sub nom. Nuclear Engineering Co.* v. *Fahner*, 455 U. S. 993 (1982); *Aparicio* v. *Swan Lake*, 643 F. 2d 1109, 1111 (CA5 1981); *Local P–171* v. *Thompson Farms Co.*, 642 F. 2d 1065, 1068 (CA7 1981); *Atkins* v. *Scott*, 597 F. 2d 872, 879 (CA4 1979); *Braden* v. *University of Pittsburgh*, 552 F. 2d 948, 950–951 (CA3 1977) (en banc); *Cole* v. *Tuttle*, 540 F. 2d 206, 207, n. 2 (CA5 1976); *Hellerstein* v. *Mr. Steak, Inc.*, 531 F. 2d 470, 471–472 (CA10), cert. denied, 429 U. S. 823 (1976); *Hanson* v. *Hunt Oil Co.*, 488 F. 2d 70, 72 (CA8 1973) *(per curiam)*; *Alabama Labor Council* v. *Alabama*, 453 F. 2d 922, 923–925 (CA5 1972); *Woods* v. *Baltimore & Ohio R. Co.*, 441 F. 2d 407, 408 (CA6 1971) *(per curiam);* see also *Liberty Mutual Insurance Co.* v. *Wetzel*, 424 U. S. 737, 745 (1976); cf. *Browder* v. *Director, Illinois Department of Corrections*, 434 U. S. 257 (1978).

*Swan Lake*, 643 F. 2d, at 1110–1113; see also *Nuclear Engineering Co.* v. *Scott*, 660 F. 2d 241, 245–248 (CA7 1981) (describing the jurisdictional question as a "rather thorny" one, *id.*, at 245, and observing that the principle common to most cases on point "is that a district court may not re-enter a certification order to enlarge the time for appeal when the failure to timely appeal from the original certification order was due solely to mere neglect of counsel," *id.*, at 246), cert. denied *sub nom. Nuclear Engineering Co.* v. *Fahner*, 455 U. S. 993 (1982); *Braden* v. *University of Pittsburgh*, 552 F. 2d 948, 949–955 (CA3 1977) (en banc) (distinguishing *Woods* and *Nakhleh* but suggesting in dictum disagreement with those cases); see generally 9 J. Moore, B. Ward, & J. Lucas, Moore's Federal Practice ¶ 205.03[2], pp. 5–8 to 5–11 (1983); 16 C. Wright, A. Miller, E. Cooper, & E. Gressman, Federal Practice and Procedure § 3929, pp. 153–155, § 3951, p. 369 (1977); Note, Interlocutory Appeals in the Federal Courts Under 28 U. S. C. § 1292(b), 88 Harv. L. Rev. 607, 615–616 (1975). It is of course our duty to recognize a jurisdictional question of this kind *sua sponte*.

It is quite plain that the District Court in the instant case recertified the interlocutory order nine months after the time for petitioning had expired for the purpose of permitting what would otherwise be a time-barred interlocutory appeal. While I think the jurisdictional question here is a close one, and believe that we should not decide it in a summary fashion, I concur in the majority's holding that there is jurisdiction. I am presently persuaded by the view, supported by the commentators, that interlocutory appeals in these circumstances should be permitted, notwithstanding the fact that this view essentially renders the 10-day time limitation, if not a nullity, essentially within the discretion of a district court to extend at will.

### III

I will not engage in the task of identifying the nature and source of all of the failures to observe the procedural re-

quirements imposed by the Legislature in this case. As to whether it is fair to say on this record that respondent failed to act diligently to preserve her claim when she was acting *pro se*, I think the record largely speaks for itself. I might observe that if there had been strict adherence to the Federal Rules of Civil Procedure, in all likelihood this lawsuit would have ended in January 1982 with the bench trial originally scheduled, rather than stayed indefinitely in order to litigate an issue which would seem to have more relevance to a 19th-century lawyer schooled in technical pleading requirements than a 20th-century federal judge whose first procedural rule is to achieve the just, speedy, and inexpensive termination of litigation.

The question initially framed *sua sponte* by the Magistrate and then *sua sponte* ruled upon by the District Court was never presented in this case. The majority seems to agree with respondent that the statute of limitations issue was not a jurisdictional question, see *Mohasco Corp.* v. *Silver*, 447 U. S., at 811, and n. 9; cf. *Zipes* v. *Trans World Airlines, Inc.*, 455 U. S. 385 (1982), and hence since petitioner never set forth the affirmative defense of the statute of limitation pursuant to Rule 8(c) (though it "reserved" the right to do so) nor moved to dismiss the Title VII claims as time-barred under Rule 12(b), the District Court erred in dismissing these claims *sua sponte*. Even if the issue were jurisdictional, the question in the case was never whether the right-to-sue letter was a complaint—the question was whether a complaint had been timely filed. The right-to-sue letter was the first document "filed" by respondent, and was apparently treated as a complaint for all practical purposes by the District Court, with the telling exception of failing to trigger issuance of a summons. But the right-to-sue letter was not the only document filed by respondent. *In March she filed a complaint.* Certainly the District Court should not have declined to treat the March letter as a complaint "merely because respondent did not *label*" it as a complaint "for that

would exalt nomenclature over substance." *Browder* v. *Director, Illinois Department of Corrections*, 434 U. S. 257, 272 (1978) (BLACKMUN, J., joined by REHNQUIST, J., concurring); see also *Schlesinger* v. *Councilman*, 420 U. S. 738, 742, n. 5 (1975). If only this *pro se* civil rights plaintiff claiming racial discrimination had been able to grasp the talismanic significance of labeling that document a "complaint," or perhaps a "petition," to use the nomenclature of Judge Varner, the Clerk's office would have mechanically issued a summons, see Fed. Rule Civ. Proc. 4(a), and then petitioner could have filed a motion for a more definite statement pursuant to Rule 12(e) if the complaint did not adequately serve the purposes of modern-day notice pleading.

But of course petitioner would not have needed a more definite statement. The Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is a 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley* v. *Gibson*, 355 U. S. 41, 47 (1957) (footnote omitted). It would be absurd to suggest that petitioner would not have had fair notice of the claim against it had the documents filed *pro se* by respondent been served upon it. "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Id.*, at 48. Missteps by *pro se* Title VII plaintiffs, it would seem, are not so easily ignored.

Rule 8(f) provides that "[a]ll pleadings shall be so construed as to do substantial justice." We frequently have stated that *pro se* pleadings are to be given a liberal construction. *E. g.*, *Haines* v. *Kerner*, 404 U. S. 519 (1972). If these pronouncements have any meaning, they must protect the *pro se* litigant who simply does not properly denominate her motion or pleading in the terms used in the Federal

Rules. If respondent was not pleading for relief in the District Court, one wonders what the majority thinks she was doing there.

I therefore conclude that had the Federal Rules of Civil Procedure been strictly followed in this case—Rules which eschew the sterile formalism which permeated the approach to this case in the District Court and in this Court—the question certified for interlocutory review would have never been presented. However, that question was answered by the court below, albeit in an unpublished opinion with no precedential significance, and the majority today rushes to disagree with that opinion, ignoring the fact that even if the opinion is incorrect, the judgment reversing the District Court's order dismissing the Title VII claim is correct.[2]

---

[2] And, of course, the Court ignores the rule that this Court reviews judgments rather than opinions. See *Black* v. *Cutter Laboratories*, 351 U. S. 292, 297 (1956). "Where the decision below is correct it must be affirmed by the appellate court though the lower tribunal gave a wrong reason for its action." *J. E. Riley Investment Co.* v. *Commissioner*, 311 U. S. 55, 59 (1940). "If the judgment should be correct, although the reasoning, by which the mind of the Judge was conducted to it, should be deemed unsound, that judgment would certainly be affirmed in the superior Court." *Williams* v. *Norris*, 12 Wheat. 117, 120 (1827). "The question before an appellate Court is, was the *judgment* correct, not the *ground* on which the judgment professes to proceed." *McClung* v. *Silliman*, 6 Wheat. 598, 603 (1821). See also *Ex parte Royall*, 117 U. S. 241, 250 (1886).

The majority, in *summarily* reversing the judgment below, does not believe it is our duty to examine the record to discover grounds to uphold the judgment below. Yet 28 U. S. C. § 2111 commands:

"On the hearing of any appeal or writ of certiorari in any case, the Court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."

Even assuming that the opinion of the Court of Appeals is part of the record within the meaning of that statute, but see *Williams* v. *Norris*, 12 Wheat., at 118–120, and assuming that the opinion is erroneous, an examination of the record reveals that the error of the Court of Appeals did not affect the substantial rights of the parties. Cf. *Torres-Valencia* v. *United*

## IV

The majority tells us that the Court of Appeals "identified no basis in the statute or its legislative history, cited no decision of this Court, and suggested no persuasive justification

*States*, 464 U. S. 44 (1983) (REHNQUIST, J., dissenting) ("Summary disposition is . . . appropriate where a lower court has demonstrably misapplied our cases in a manner which has led to an incorrect result").

Parties may argue any ground in support of a judgment which finds support in the record. *Ryerson* v. *United States*, 312 U. S. 405, 408 (1941); *LeTulle* v. *Scofield*, 308 U. S. 415, 421 (1940); *Langnes* v. *Green*, 282 U. S. 531, 533–539 (1931). And we have previously stated that "in the absence of a claim on [repondent's] part that, conceding the errors exposed by [the lower court] opinion, the judgment is right, we will not examine the record to discover grounds to sustain it." *Indiana Farmer's Guide Publishing Co.* v. *Prairie Farmer Publishing Co.*, 293 U. S. 268, 281 (1934). Such a position may have force in a case involving a judgment like that involved in *Indiana Farmer's Guide Publishing Co.* where we have granted review and had full argument and briefing. But see *United States* v. *Spector*, 343 U. S. 169, 180 (1952) (Jackson, J., dissenting) ("It is our duty before reversing a judgment to examine any ground upon which it can be sustained, even a ground which the court below may have overlooked or expressly rejected. . . . The least that could be done would be to order the case reargued"). This case is now here on a petition for certiorari. Respondent has thus largely limited briefing to the reasons the decision below does not merit an exercise of this Court's discretionary jurisdiction. Moreover, respondent has fallen prey to the tendency in § 1292(b) appeals to treat the appeal as limited to the abstract legal question certified, ignoring the point that even in § 1292(b) appeals, it is still the correctness of the order that is the question on appeal.

I had always thought that the burden was on the appellant or petitioner to establish that the judgment of the court below should be reversed. Petitioner asserts that respondent "never actually took the full step required, the filing of some form of complaint or documentation which could be interpreted as a pro se complaint within the time period specified by Congress," Pet. for Cert. 9, but this assertion is not supported by the record. "[I]t is our duty to deal with the case as it is disclosed by the record . . . . A like obligation rests upon counsel." *Chapman & Dewey Lumber Co.* v. *St. Francis Levee Dist.*, 234 U. S. 667, 668 (1914). The substance of respondent's argument on the merits is that under the record facts, she did comply with the time limitation. I find it remarkable that the majority enters a

for its view that the Federal Rules of Civil Procedure were to have a different meaning in, or not apply to, Title VII litigation." *Ante*, at 149–150. Of course, the court below never held that the Federal Rules are inapplicable to Title VII litigation, and I am quite sure it would not do so. What it did was hold that the time limitation created by Title VII was tolled by filing the right-to-sue letter.

The majority rejects the unpublished opinion of the Court of Appeals, but the majority has "identified no basis in the statute or legislative history, cited no decision of this Court, and suggested no persuasive justification for its view" that the court below erred. Instead, the majority seemingly assumes that there is no authority supporting the decision below and simply indicates that the opinion below offers an "unpersuasive" justification. The majority all but ignores the Fifth Circuit's decision in *Wrenn* and the Eighth Circuit's decisions in *Huston* v. *General Motors Corp.*, 477 F. 2d 1003, 1006–1008 (1973), and *Wingfield* v. *Goodwill Industries*, 666 F. 2d 1177, 1179, n. 3 (1981).

"The basic question to be answered in determining whether, under a given set of facts, a statute of limitations is to be tolled, is one 'of legislative intent whether the right shall be enforceable . . . after the prescribed time.'" *Burnett* v. *New York Central R. Co.*, 380 U. S. 424, 426 (1965). "In order to determine congressional intent, we must examine the purposes and policies underlying the limitation provision, the Act itself, and the remedial scheme developed for the enforcement of the rights given by the Act." *Id.*, at 427. We have held that even when "a lawsuit is filed" in a court which lacks personal jurisidiction over the defendant, "that

---

*judgment* in a case involving a procedural question of this kind, openly ignoring the contents of the record. If its only interest in this case is to "reverse" the unpublished opinion of the Court of Appeals and if it cannot be bothered with examining the record and rendering a correct judgment, the very least it could do in its summary disposition would be to vacate the judgment below and remand for further proceedings.

filing shows a desire on the part of the plaintiff to begin his case and thereby toll whatever statutes of limitation would otherwise apply. The filing itself shows the proper diligence on the part of the plaintiff which such statutes of limitation were intended to insure." *Goldlawr, Inc.* v. *Heiman*, 369 U. S. 463, 467 (1962). In holding that Congress did not intend to impose any time limitation on enforcement suits by the EEOC, we observed that unlike the litigant in an ordinary private action who may first learn of the cause against him upon service of the complaint, the Title VII defendant is alerted to the possibility of an enforcement suit when the charge has been filed with the EEOC. *Occidental Life Insurance Co.* v. *EEOC*, 432 U. S. 355, 372 (1977). Given this remedial scheme, filing the right-to-sue letter and exercising reasonable diligence in the District Court in attempting to obtain counsel and file a formal complaint should toll the statute of limitations. See *Wingfield* v. *Goodwill Industries*, 666 F. 2d, at 1179, n. 3; *Wrenn* v. *American Cast Iron Pipe Co.*, 575 F. 2d 544 (CA5 1978); *Huston* v. *General Motors Corp.*, 477 F. 2d, at 1006–1008; see also *Harris* v. *Walgreen's Distribution Center*, 456 F. 2d 588, 591–592 (CA6 1972) (motion for appointment of counsel tolls limitation period); see generally *Love* v. *Pullman Co.*, 404 U. S. 522, 527 (1972); *Sanchez* v. *Standard Brands, Inc.*, 431 F. 2d 455 (CA5 1970); *Pettway* v. *American Cast Iron Pipe Co.*, 411 F. 2d 998 (CA5 1969); S. Rep. No. 92–415, p. 17, and n. 9 (1971) (noting burden of initiating legal proceedings on Title VII litigants, and citing with approval *Sanchez* v. *Standard Brands, Inc.*, *supra*, and *Pettway* v. *American Cast Iron Pipe Co.*, *supra*).

The Court does not "find anything in the record to call for the application of the doctrine of equitable tolling." *Ante*, at 151. Such an assertion is easily made when the record is reduced to a few conclusory statements. While the April 7 letter from Judge Varner did indicate that she should file a "petition" in the transferee court "to be safe," a fair reading of the entire record would yield the conclusion that respond-

ent was led to believe that she needed an attorney in order "to draft a lawsuit," to paraphrase the language used by the Magistrate in his April 15 order. The right-to-sue letter itself suggested as much as well.

The majority also tells us that it is "not clear from the opinion of the Court of Appeals for how long the statute is tolled." *Ante*, at 151, n. 5. Given the fact that the Court of Appeals was deciding an interlocutory appeal and its opinion was unpublished, the lack of clarity is not surprising. All the Court of Appeals was doing was reviewing a specific order and deciding whether on the facts of the case before it, the District Court erred in entering the order. It is, however, clear that the decision in *Wrenn*, upon which the court below relied, leaves ample room for dismissals when plaintiffs slumber on their rights. See, *e. g.*, *Potts* v. *Southern R. Co.*, 524 F. Supp. 513 (ND Ga. 1981).

In the end, the District Court's dismissal of respondent's race discrimination claim amounted to no more than a sanction for her failure to refile her request for appointment of counsel on the correct forms quickly enough to suit the Magistrate. The majority opinion in this Court amounts to little more, the Court telling us that she "was told three times what she must do to preserve her claim, and she did not do it." *Ante*, at 151. Of course, she had done it, but the majority does not even seem to care.

I respectfully dissent.