

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-19-1999

# Seitzinger v. Reading Hospital

Precedential or Non-Precedential:

Docket 97-1698

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Seitzinger v. Reading Hospital" (1999). *1999 Decisions.* Paper 10.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/10

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 15, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 97-1698

SHARYN L. SEITZINGER,
      Appellant

v.

THE READING HOSPITAL AND
MEDICAL CENTER

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civ. No. 95-cv-05926)
District Judge: Honorable E. Mac Troutman

Argued: November 16, 1998

Before: BECKER, Chief Judge, GREENBERG, Circuit Judges
and McLAUGHLIN, District Judge.*

(Filed January 15, 1999)

_____

*Honorable Sean J. McLaughlin, United States District Judge for the
Western District of Pennsylvania, sitting by designation.

STEPHEN M. LATIMER, ESQUIRE
  (ARGUED)
LUCILLE M. ROSANO, ESQUIRE

Loughlin & Latimer
131 Main Street
Suite 235
Hackensack, NJ 07601

Counsel for Appellant

VINCENT CANDIELLO, ESQUIRE
  (ARGUED)
Morgan, Lewis & Bockius LLP
One Commerce Square
417 Walnut Street
Harrisburg, PA 17101

Counsel for Appellee

OPINION OF THE COURT

BECKER, Chief Judge.

This appeal by plaintiff Sharyn Seitzinger in a Title VII case alleging gender and age discrimination by her former employer, defendant Reading Hospital and Medical Center, requires us to decide when the circumstances surrounding an attorney's misconduct are sufficient to merit equitable tolling of the statute of limitations. The appeal perforce centers on the timeliness of the complaint. The District Court granted summary judgment for the Hospital, believing the complaint to be time-barred under 42 U.S.C. S 2000e-5(f)(1) because it was not filed within ninety days of the receipt of the EEOC's right-to-sue letter. The Court rejected Seitzinger's fall-back position that the time deadline should have been extended under the doctrine of equitable tolling because of the defalcations of her lawyer, who missed the filing deadline, albeit only by one day.

We agree with the district court's basic timeliness determination and affirm on that point. However, we

2

disagree on equitable tolling. The district court proceeded on the theory that an attorney's delinquency is chargeable to the client and, at all events, is not a basis for equitable tolling. This is generally true, consistent with the rule that equitable tolling is to be used sparingly, particularly in the context of attorney default. However, where -- as here -- the allegation is that a diligent client persistently questioned the lawyer as to whether he had filed the complaint in time, and he affirmatively misrepresented to her that he had, we think there is a sufficient claim of attorney abandonment to bring the case within the narrow line of cases in which lawyer misconduct justifies equitable tolling.

Because the District Court erroneously thought that equitable tolling could not be justified here, we will reverse. Because the equitable tolling determination turns on a weighing and balancing of factors, including the extent of attorney misconduct, the diligence of the client, and prejudice to the defendant, we think it preferable to offer the District Court the opportunity to exercise its discretion and make the tolling determination in the first instance. Hence, we will remand for further consideration.

I.

Seitzinger started work at Reading Hospital in 1984. In May, 1993, she had an argument with her office manager and was suspended. She later was given the option to resign or be fired, and she opted to resign. A few months later, she filed a complaint with the EEOC, alleging age and gender discrimination. The EEOC concluded that there was sufficient evidence of a gender discrimination claim. At this point, Seitzinger retained an attorney named David Sloane to help her with her case. However, after attempts at reconciliation between Seitzinger and the Hospital failed, the EEOC declined to transfer Seitzinger's case to its Legal Unit and, in a letter dated May 30, 1995, notified Seitzinger of its intention to issue to her, under separate cover, a right-to-sue letter. The letter also stated that she could file a lawsuit within ninety days of receiving the right-to-sue letter.

On June 15, 1995, the EEOC sent the right-to-sue letter to Seitzinger, Sloane, and Reading Hospital. The Hospital received its copy of the right-to-sue letter on June 19. Seitzinger does not know when she and Sloane received their copies of the letter; she does not recall receiving her letter, and Sloane had recently changed his address. The first postmark on Sloane's letter was June 15, and the second postmark, on the "change of address" label, was June 17. Soon after receiving the letter, Seitzinger decided to bring a Title VII suit against the Hospital. On July 2, 1995, Sloane wrote to Seitzinger, advising her that he was in the process of drafting the complaint. Seitzinger called Sloane in early September to make sure that he had filed the complaint on time. Sloane assured Seitzinger that he had done so. However, Sloane did not actually file the complaint until September 19, 1995.

On June 7, 1996, the District Court dismissed Seitzinger's complaint without prejudice for failure to serve Reading Hospital with the complaint. At some point that spring, Sloane told Seitzinger, who had repeatedly called him to ask for a copy of the complaint and to inquire about the status of her case, that he was giving up his law practice. In fact, Sloane had been suspended from the practice of law in October 1995. After picking up her file from Sloane, Seitzinger called the Clerk of the District Court to check on the status of her case and was told that her complaint had been dismissed.

On September 22, 1996, Seitzinger moved to vacate the dismissal because her attorney had failed to serve the complaint and had been disbarred in July 1996. Although the District Court granted her motion to vacate, and Seitzinger timely served the Hospital with a notice of the complaint, the District Court subsequently granted the Hospital's motion for summary judgment on the ground that the complaint was not timely filed. This appeal followed. We have jurisdiction pursuant to 28 U.S.C. S 1291. Our review of the district court's grant of the Hospital's motion for summary judgment is plenary, see Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990), and we must construe the facts in the light most favorable to the non-moving party, see Gallo v. City of Philadelphia, 161 F.3d 217, 219 (3d Cir. 1998).

4

II.

We must initially decide whether Seitzinger has introduced sufficient evidence to identify the date on which she or Sloane received the EEOC's right-to-sue letter, for it is from that date that we determine whether Seitzinger's complaint was timely filed in federal court. If Seitzinger has failed to do so, we will apply the Federal Rules' presumption that a party receives a document three days after it was mailed, see Fed. R. Civ. P. 6(e), in which case we would begin to count from June 18, 1995, and Seitzinger's complaint would not be timely. Even if she has produced some evidence that we should begin to count from June 19, we conclude that there is still no genuine issue of material fact bearing on timeliness because the ninety-day period still expired before she filed her claim.1

42 U.S.C. S 2000e-5(f)(1) provides that if the EEOC takes no action on a complaint within a specified period of time, the agency "shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought . . . ." Id. We have construed this provision to mean that the time for the filing of a complaint begins to run when the plaintiff has notice of the EEOC's decision, which usually occurs on the date he receives a right-to-sue letter from the agency. See Mosel v. Hills Dep't Store, Inc., 789 F.2d 251, 252 (3d Cir. 1986). The EEOC's right-to-sue letter also informs the claimant that he or she has ninety days after receipt in which to file suit. See id. at 252-53. Therefore, the date on which Seitzinger received the letter becomes critical.

When the actual date of receipt is known, that date controls. Dixon v. Digital Equip. Corp., 1992 WL 245867, *1 (4th Cir. Sept. 30, 1992) (unpublished disposition); Peete v. American Standard Graphic, 885 F.2d 331 (6th Cir. 1989).

_____

1. The statutorily-created ninety-day period starts when either the claimant or her attorney receives a right-to-sue letter, whichever is earlier. See Irwin v. Department of Veterans Affairs, 498 U.S. 89, 92-93 (1990) (notice is received when the EEOC delivers its letter to a claimant or the claimant's attorney). Because we conclude that Seitzinger received the letter no later than June 19, the date on which her attorney received his letter is irrelevant.

5

However, in the absence of other evidence, courts will presume that a plaintiff received her right-to-sue letter three days after the EEOC mailed it. See Fed. R. Civ. P. Rule 6(e); Mosel, 789 F.2d at 253 n.2 (stating that the Supreme Court has suggested that Rule 6(e) applies when parties dispute the date of receipt). Rule 6(e)'s three-day presumption attempts to ensure that the plaintiff has the benefit of the full ninety-day period when the date of actual receipt is unknown.

Seitzinger states that she does not recall receiving a right-to-sue letter directly from the EEOC. Nevertheless, the right-to-sue letter was addressed to her at the address at which she has received information from the EEOC since this action began. Seitzinger offers only one piece of evidence to suggest that she may have received her letter after June 18: the Hospital received its copy of the letter on June 19. While this evidence may not be of sufficient weight to rebut Rule 6(e)'s presumption, we need not decide this issue: even if we were to assume that the date the Hospital received its copy of the right-to-sue letter was the date on which Seitzinger received hers, she still failed to file her complaint within ninety days of June 19. Ninety days from June 19 is September 17. Since September 17 was a Sunday, Seitzinger had until September 18 to file her complaint. Because she, through her attorney, did not file the complaint until September 19, she failed to meet the EEOC's ninety-day filing period.

III.

Anticipating that the District Court might conclude that her complaint was not timely, Seitzinger asked the District Court to equitably toll the ninety-day period so that her suit would be deemed timely filed. The Court refused to do so, concluding that dereliction of counsel was an insufficient reason to invoke equitable tolling. The law is clear that courts must be sparing in their use of equitable tolling. There are, however, narrow circumstances in which the misbehavior of an attorney may merit such equitable relief. See, e.g., Cantrell v. Knoxville Community Dev. Corp., 60 F.3d 1177, 1180 (6th Cir. 1995) (equitable tolling may be appropriate where attorney has abandoned client).

6

As a preliminary matter, we note that it is settled that the ninety-day time limit in which a plaintiff mustfile a Title VII action is akin to a statute of limitations rather than a jurisdictional bar. Therefore, the time limit is subject to tolling. See, e.g., Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) (holding that time limits in Title VII are not jurisdictional but are instead like statutes of limitations); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994) (stating that time limits set forth in Title VII are analogous to statutes of limitations and are subject to equitable modifications).

Under equitable tolling, plaintiffs may sue after the statutory time period for filing a complaint has expired if they have been prevented from filing in a timely manner due to sufficiently inequitable circumstances. Ellis v. General Motors Acceptance Corp., 160 F.3d 703, 706 (11th Cir. 1998); Naton v. Bank of California, 649 F.2d 691, 696 (9th Cir. 1981); Mathews v. Little, Civ. A. No. 92-CV-1114, 1992 WL 192542, *2 (E.D. Pa. July 31, 1992). The caselaw is instructive. The Supreme Court has held that equitable tolling may be appropriate when a claimant received inadequate notice of her right to file suit, where a motion for appointment of counsel is pending, or where the court has misled the plaintiff into believing that she had done everything required of her. See Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 151 (1984). In United States v. Midgley, 142 F.3d 174 (3d Cir. 1998), we expressed a willingness to invoke equitable tolling in a number of other circumstances: when the defendant has actively misled the plaintiff; when the plaintiff "in some extraordinary way" was prevented from asserting her rights; or when the plaintiff timely asserted her rights in the wrong forum. See id. at 179; Oshiver, 38 F.3d at 1387. See also Miller v. New Jersey State Dep't of Corrections, 145 F.3d 616, 618 (3d Cir. 1998) (equitable tolling is an appropriate remedy when principles of equity would make a rigid application of the statute of limitations unfair); Shendock v. Office of Workers' Compensation Programs, 893 F.2d 1458, 1462 (3d Cir. 1990) (same).

Although the Supreme Court has repeatedly recognized the equitable tolling doctrine, it also has cautioned that

7

"[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." Baldwin, 466 U.S. at 152. We too have exercised caution in using the doctrine. In Mosel, we emphasized the importance of adhering to the EEOC's ninety-day filing period, holding that "in the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day." 789 F.2d at 253 (citations omitted). We therefore approach the doctrine warily, so as to guard against possible misuse.

Seitzinger alleges that the facts of her case fit into Midgley's second category: namely, that this is an "extraordinary" case where she was prevented from timely asserting her rights because of gross attorney error. The usual rule is that attorney errors will be attributed to their clients. See United States v. Boyle, 469 U.S. 241, 252 (1985) (client may be penalized for counsel's tardy filing of tax return); Link v. Wabash, 370 U.S. 626, 633 (1962) (client must suffer the consequence of dismissal of his lawsuit where his attorney failed to attend pretrial conference).

Nonetheless, some courts have found it appropriate to toll the statute of limitations in cases of attorney mistake. See, e.g., Cantrell, 60 F.3d at 1180 (holding that where client was abandoned by attorney due to attorney's mental illness, equitable tolling may be appropriate). In Burton v. United States Postal Serv., 612 F. Supp. 1057, 1059 (N.D. Ohio 1985), the court applied equitable tolling to the plaintiff's claim because his attorney "irresponsibly abandoned his client and the case and left town." Finding that the plaintiff had been diligent in pursuing his claim, that the defendant's interest in prompt notice of claims against it had not been substantially damaged by the delay, and that to penalize the plaintiff in this case would defeat the remedial purpose of Title VII, the court tolled the EEOC's filing deadline. Id. Likewise, in Volk v. Multi-Media, Inc., 516 F. Supp. 157, 161-62 (S.D. Ohio 1981), the plaintiff's attorney failed to timely inform the Department of Labor that his client intended to sue his former employer under the Age Discrimination in Employment Act. The

8

court took into account the fact that the plaintiff's attorney was inept and sloppy, that the defendant suffered no prejudice, and that the plaintiff was diligent in finding out about the ADEA and hiring an attorney. The court concluded that it was unwilling to visit the errors of that lawyer on his client. Id. at 162.

In the context of a Title VII claim, the Supreme Court has warned, "[T]he principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect" by an attorney. Irwin, 498 U.S. at 96. In Irwin, the plaintiff's lawyer was out of the country when the right-to-sue letter was delivered to his office. Although the statute of limitations in that case was thirty days, the lawyer filed suit forty-four days later, albeit only twenty-nine days after his client received his copy of the letter. Since the lawyer's only excuse was his absence from the office, the Court refused to apply equitable tolling. See id. We therefore must decide whether Sloane's behavior, as reflected by the present record, is of a type that goes beyond garden variety neglect.

We conclude that it is. Sloane's level of misbehavior went well beyond the garden variety, because Sloane affirmatively lied to his client. When she called Sloane in early September to check on the status of the complaint, Sloane assured her that he had filed it, when in fact he had not. In addition, he promised her a number of times that he would send or had sent her a copy of the complaint, yet he never did. We agree with the Hospital that the mere fact that counsel failed to file the complaint in a timely manner probably constitutes garden variety neglect. But his affirmative misrepresentations to his client about the very filing at issue here rise above that standard. The Supreme Court's declaration in Irwin that garden variety attorney neglect is an insufficient reason to invoke equitable tolling therefore does not control the outcome in this case.

We conclude that Seitzinger has adduced facts sufficient to overcome summary judgment on the equitable tolling issue. First (and importantly), Seitzinger appears to have been extremely diligent in pursuing her claim. See Irwin, 498 U.S. at 96 (implying that the Court has been more forgiving of late filings where claimant exercised due

9

diligence in preserving his rights); New Castle County v. Halliburton NUS Corp., 111 F.3d 1116, 1126 (3d Cir. 1997) (stating that to invoke equitable tolling, a party must show that it exercised reasonable diligence in investigating and bringing its claims). She hired an attorney to help her file her civil complaint. She contacted him before thefiling deadline, which she knew about in broad terms, to ensure that he had filed the complaint. In addition, she repeatedly called him, requesting a copy of the complaint and seeking information on how her case was progressing.[2] We think that these examples of her consistent assiduousness, if true, would weigh heavily in favor of equitable tolling.

In addition to Seitzinger's diligence as a client, it is important to consider whether she had actual or constructive notice of the filing requirement, and whether her lack of knowledge was reasonable. It appears from the facts before us that she lacked notice of the exact date on which her complaint had to be filed, although she had a general idea that her complaint had to be filed towards the end of September. It may be that her lack of knowledge of the specific filing date was not reasonable, since she received the EEOC's letter, but then again her putative knowledge may have been eroded by her attorney's misrepresentations. Moreover, the defendants have proffered no evidence of prejudice as a result of the one- or two-day delay in filing. Although courts may not rely on lack of prejudice as a determinative factor, once a factor that might justify equitable tolling is identified, prejudice is a factor to be considered. See Baldwin, 466 U.S. at 152.

Given this welter of material, countervailing factors, we believe that the District Court was mistaken in concluding that Seitzinger has not presented material issues of fact such that a reasonable factfinder could conclude that her diligence, coupled with her attorney's direct lies about

_____

2. We note that she continued to be diligent after she learned that her attorney had effectively abandoned her. She picked up her files from him and contacted the District Court to check on the status of her case. She consulted with ten to fifteen attorneys, trying to determine whether there was a way to get her case reinstated by the Court. Finally, she moved (successfully) for the District Court to vacate the dismissal of her case.

10

whether he had filed her complaint and an absence of prejudice to the defendant, created a situation appropriate for tolling. We must therefore reverse the grant of summary judgment. However, since the sensitive decision as to whether to equitably toll the time limit involves weighing and balancing (and possibly further factual development), we will leave the decision of whether to apply equitable tolling to the discretion of the District Court in the first instance. The judgment of the District Court will be reversed and the case remanded for further proceedings consistent with this opinion.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit