John D. CALLAN, Plaintiff,

v.

PEPSI–COLA BOTTLING CO. OF
TOPEKA, INC., Defendant.

Civ. A. No. 91–4101–DES.

United States District Court,
D. Kansas.

Dec. 16, 1992.

K. Gary Sebelius, Catherine A. Walter, Wright, Henson, Somers, Sebelius, Clark & Baker, Topeka, KS, Robert F. Rossiter, Jr., Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., Omaha, NE, for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter came before the court for trial on November 19, 1992. Having reviewed the evidence and the arguments of counsel, the court makes the following findings of fact and conclusions of law in accordance with Fed.R.Civ.Proc. 52.

### Findings of Fact

1. John D. Callan, the plaintiff, was born February 23, 1929. In August 1975, he accepted a position with Pepsi–Cola of Topeka, Inc. ("Pepsi–Topeka"), the defendant, as its sales and advertising manager.

2. Pepsi–Topeka is a Kansas corporation with its principal place of business in Topeka, Kansas.

3. During the years plaintiff served as sales and advertising manager, Pepsi–Topeka's total sales increased. However, at least for the years 1983 through 1988 inclusive, the profit margin per case was significantly lower than the industry standard; in 1984 and 1985, Pepsi–Topeka actually experienced a net loss per case. Plaintiff had significant responsibility for pricing products, and was at least indirectly responsible for costs associated with the sales and marketing function.

4. The owners of Pepsi–Topeka, Don and Fern Hogue, sold the company to a Nebraska corporation known as LinPepCo ("LinPepCo Corporation") on April 20, 1989. The principal place of business of LinPepCo Corporation is Lincoln, Nebraska.

5. LinPepCo Corporation's stock is solely owned by a Nebraska partnership also known as LinPepCo ("LinPepCo Partnership"). At all relevant times, Don and Fern Hogue owned a one-seventh share of LinPepCo Partnership.

Robert M. Telthorst, Telthorst & Associates, P.A., Topeka, KS, for plaintiff.

6. Early on the morning of April 21, 1989, Don and Fern Hogue met with the employees of Pepsi–Topeka and announced the sale to LinPepCo Corporation. Thereafter, a separate meeting was held with plaintiff and other members of the management team of Pepsi–Topeka. Don and Fern Hogue presented the plaintiff and each of the other management personnel with written employment agreements, indicating they should be signed "right now."

7. Plaintiff expressed concern about certain aspects of the employment agreement that he believed to be in error or unclear. He asked if he would be permitted to consult with a lawyer. Fern Hogue stated that if he did not sign, he would not have a contract and he could be terminated at any time. She did not state that plaintiff would be terminated immediately if he did not sign the agreement. Plaintiff was not prevented from seeking the advice of private counsel, nor was he prevented from leaving the room.

8. Plaintiff carefully read and deliberated over the agreement, although he did not fully understand it. He signed the employment agreement within 45 minutes of receiving it, without leaving the room and without seeking the advice of counsel.

9. The terms of the employment agreement were generally favorable to the plaintiff. The agreement provided that plaintiff would be employed in the position of sales manager, but would perform only the duties and services specifically requested by the Board of Directors of Pepsi–Topeka. It further provided that plaintiff's salary (then $34,840 annually) and benefits would continue for a 10–month period ending February 20, 1990. The agreement expressly permitted plaintiff to seek employment elsewhere during the 10–month term, provided that the monthly salary payable by Pepsi–Topeka would be reduced by the gross compensation earned by plaintiff as a result of other employment during the period. The employment agreement specifically provided, "Company may terminate Employee's employment at any time, either with or without cause; provided however, any such termination by Company shall not relieve Company of its obligation to pay the Monthly Salary during the Employment Period."

10. After April 21, 1989, plaintiff went to work as usual and carried out his normal duties as sales and advertising manager for Pepsi–Topeka.

11. On June 8, 1989, plaintiff met with Richard Nicoll ("Nicoll"), LinPepCo Corporation's president and general manager, and Steve Ford ("Ford"), its vice-president of finance and administration. They informed plaintiff that the company was consolidating positions, that there was no longer a place for him in the organization, and that his position was being eliminated.

12. Nicoll told plaintiff that Dave Slagle, LinPepCo Corporation's vice-president of sales and marketing, would be handling plaintiff's functions from his office in Lincoln, Nebraska.

13. Nicoll stated that they might need to consult with plaintiff from time to time. Plaintiff expressed interest in continued employment with the company in some other position. Nicoll stated he would do whatever he could to assist plaintiff in finding employment.

14. Plaintiff's age was not mentioned by Nicoll or Ford as a reason for his termination. Plaintiff was not terminated for willful misconduct.

15. The alleged unlawful act that is the basis of plaintiff's complaint occurred at the latest on June 8, 1989, when plaintiff was notified of his termination. By mutual agreement, plaintiff's last day on the job at Pepsi–Topeka was June 15, 1989.

16. Nicoll made the decision to terminate plaintiff because he was not proactive as a sales manager and did not spend sufficient time making field sales contacts. In his opinion and experience, these characteristics are important to be effective as a sales manager.

17. In deciding to terminate plaintiff, Nicoll in part relied upon negative comments about plaintiff's effectiveness that were made to him by Michael Barnhill, a representative of Pepsi–Cola U.S.A., and Ron Williams, regional manager of Barq's Root Beer. Both

Pepsi–Cola U.S.A. and Barq's Root Beer were franchisors of Pepsi–Topeka, and they supplied concentrate for some of the soft drinks bottled and distributed by Pepsi–Topeka.

18. Henry Wassenberg, one of the seven partners of LinPepCo Partnership and president of Pepsi–Cola Bottling Company of Marysville, and David Slagle had also provided Nicoll input regarding plaintiff's lack of effectiveness as a sales manager. In addition, Steve Ford had expressed concerns to Nicoll about the need to reduce operating expenses in order to generate increased profits for Pepsi–Topeka.

19. After June 15, 1989, David Slagle carried out sales and advertising functions for Pepsi–Topeka, regularly travelling from his Lincoln office to visit the Topeka marketplace.

20. At the time of plaintiff's termination, neither Richard Nicoll nor Steve Ford intended that David Slagle would handle sales and advertising for Pepsi–Topeka only temporarily. Neither intended at that time to replace plaintiff by hiring another individual. Rather, they were motivated to increase the profit margin for Pepsi–Topeka by reducing operating expenses, in part by eliminating plaintiff's position and consolidating sales and advertising functions with fewer personnel.

21. Richard Starr, merchandising manager for Pepsi–Topeka under plaintiff's supervision, was 55 years old as of April 21, 1989. Although he also signed an employment agreement, he was retained by the new management as district route manager, reporting directly to David Slagle.

22. In late August or early September, Richard Nicoll decided to reestablish a sales management position in Topeka for the purpose of executing marketing and promotional programs at the direction of David Slagle. The position of sales manager was reestablished only after the effort to fully consolidate the sales and marketing functions proved unworkable.

23. In late September, Dan Dagosta, then age 39 and an employee of Pepsi–Cola U.S.A., was interviewed for the position of sales manager. He was hired in late October, 1989.

24. No earlier than December 1, 1989, plaintiff learned that Pepsi–Topeka had hired a younger individual as sales manager. On January 12, 1990, Don Hogue introduced the plaintiff to Daniel Dagosta, indicating that Dagosta had replaced plaintiff as sales manager of Pepsi–Topeka.

25. Plaintiff was paid his full salary under the terms of the employment agreement until February 20, 1990, when the agreement expired. In addition, plaintiff was provided life insurance, health insurance, the use of a company automobile, and the opportunity to participate in a savings accumulation plan under which Pepsi–Topeka matched employee contributions four to one. After February 20, 1990, plaintiff received unemployment compensation for 26 weeks on the basis of his employment with Pepsi–Topeka.

26. Pepsi–Topeka properly posted notices of employees' federal statutory rights against discrimination as required by federal law.

27. On May 25, 1990, at the suggestion of the Topeka Human Rights Commission, plaintiff filed a complaint with the Kansas Commission on Civil Rights ("KCCR") and an unperfected charge with the Equal Employment Opportunity Commission ("EEOC"), charging Pepsi–Topeka with terminating him on the basis of his age.

28. The KCCR refused to process plaintiff's complaint as untimely under state law, but immediately referred the complaint to the EEOC.

29. Plaintiff filed a perfected charge with the EEOC on July 24, 1990, claiming a violation of the federal Age Discrimination in Employment Act ("ADEA") by Pepsi–Topeka.

30. Plaintiff did not seek the advice of an attorney prior to May 25, 1990, when he filed his initial complaint with the KCCR and EEOC.

### Conclusions of Law

1. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

2. The alleged unlawful discharge that is the basis of plaintiff's complaint occurred no later than June 8, 1989, when the plaintiff was notified of his termination. *Callan v. Pepsi–Cola Bottling Co. of Topeka,* 801 F.Supp. 448, 453 (D.Kan.1992); *see Gray v. Phillips Petroleum Co.,* 858 F.2d 610, 613–14 (10th Cir.1988); *Wilkerson v. Siegfried Ins. Agency,* 621 F.2d 1042, 1044–45 (10th Cir. 1980).

■ 3. Since the plaintiff's unperfected EEOC claim was filed more than 300 days following June 8, 1989, plaintiff is time-barred from bringing this action under the ADEA, unless the evidence warrants invocation of equitable tolling or equitable estoppel. *See* 29 U.S.C. §§ 626(d)(2); 633(b); *see also, e.g., Gray v. Phillips Petroleum Co.,* 858 F.2d at 615 (citing *Dartt v. Shell Oil Co.,* 539 F.2d 1256, 1260–61 (10th Cir.1976), *aff'd per curiam by an equally divided court,* 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977)); *cf. Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982) (Title VII).

■ 4. The plaintiff has the burden of persuading the court that equitable considerations should be applied in this case to avoid the 300–day statutory time limit for filing an age discrimination claim with the EEOC. *See, e.g., Byers v. Follmer Trucking Co.,* 763 F.2d 599, 600–01 (3d Cir.1985) (plaintiffs have burden to establish facts necessary to justify equitable tolling); *Taylor v. General Tel. Co. of Southwest,* 759 F.2d 437, 442 (5th Cir.1985) (burden is on plaintiff to demonstrate facts to justify equitable tolling); *cf. Akron Presform Mold Co. v. McNeil Corp.,* 496 F.2d 230, 233 (6th Cir.) (party seeking benefit of rules in avoidance of statute of limitations has burden of proof to establish them), *cert. denied,* 419 U.S. 997, 95 S.Ct. 310, 42 L.Ed.2d 270 (1974).

5. The Court of Appeals in this circuit has held that equitable tolling of ADEA time limitations is appropriate only where the circumstances of the case " 'rise to the level of active deception which might invoke the powers of equity to toll the limitations period.' " *Gray v. Phillips Petroleum Co.,* 858 F.2d 610, 615 (10th Cir.1988) (quoting *Cottrell v. Newspaper Agency Corp.,* 590 F.2d 836, 838–39 (10th Cir.1979)); *see also Wilkerson v. Siegfried Ins. Agency,* 621 F.2d 1042, 1045 (10th Cir.1980) (court may consider action by employer that misleads employee, causing him to fail to timely file notice of intent to sue); *Foutty v. Equifax Services, a Div. of Equifax, Inc.,* 764 F.Supp. 621, 622 (D.Kan. 1991) (defendant's acts allegedly constituted affirmative conduct intended to mislead plaintiff and lull her into inaction).

■ 6. Whether or not a plaintiff claiming a violation of the ADEA is entitled to equitable tolling or estoppel of the administrative filing deadlines is a matter that almost invariably involves the credibility of witnesses. *See Wilkerson v. Siegfried Ins. Agency,* 621 F.2d at 1045.

■ 7. The plaintiff contends he has met his burden of proof by establishing that he did not learn for certain until January 1990, that the defendant had hired Dan Dagosta, a younger individual, to serve as sales manager in Topeka. He argues that this is enough to invoke equitable tolling of the 300–day limit, apparently on the theory that the time did not begin run until the plaintiff acquired actual knowledge of the facts underlying his allegation of age discrimination.

■ In this circuit, however, something akin to active deception by either the employer or a government agent is required to avoid the bar of the statutory time limit for filing an administrative claim with the EEOC. *See Richardson v. Frank,* 975 F.2d 1433, 1437 (10th Cir.1991) (factual issue of equitable estoppel and tolling depends on whether plaintiff can prove he was misled and lulled into inaction despite his due diligence); *Gray v. Phillips Petroleum Co.,* 858 F.2d at 615 (active deception). The plaintiff has not shown by a preponderance of evidence that the defendant's agents deliberately misled him into believing that his discharge was for some other reason when in fact it was due to his age. To the contrary, the evidence shows that plaintiff's discharge was motivated by the desire of the new corporate owner's executives to increase the profitability of Pepsi–Topeka by reducing operating expenses, and because Nicoll believed

884

that plaintiff did not possess the proactive characteristics of an effective sales manager and that he did not spend enough time in the field making sales contacts.

■ Furthermore, the evidence does not show that plaintiff acted diligently to preserve his claim of age discrimination. *See Baldwin Cty. Welcome Center v. Brown*, 466 U.S. 147, 151, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.").

■ 8. Even if plaintiff had met his burden of proof to overcome the statutory time bar for failing to timely file his claim with the EEOC, the court concludes that the evidence does not support plaintiff's claim of age discrimination. The plaintiff has the burden in an ADEA case of establishing that age was a determining factor in the employer's actions. *Whalen v. Unit Rig, Inc.*, 974 F.2d 1248, 1252 (10th Cir.1992) (citing *EEOC v. Sperry Corp.*, 852 F.2d 503, 507 (10th Cir.1988)).

■ The plaintiff in this case presented no direct evidence of discriminatory intent. However, it is not necessary to do so if he establishes a prima facie case of age discrimination by showing that (1) he was within the protected age group; (2) he was doing satisfactory work; (3) he was discharged despite the adequacy of this work; and (4) a younger person replaced him. *See Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1420 (10th Cir.1991) (quoting *Lucas v. Dover Corp., Norris Div.*, 857 F.2d 1397, 1400 (10th Cir. 1988)). Nevertheless, even assuming *arguendo* that plaintiff established a prima facie case, the court concludes that the defendant has successfully rebutted plaintiff's circumstantial evidence by establishing legitimate nondiscriminatory reasons for discharging plaintiff. *See Lucas v. Dover Corp.*, 857 F.2d at 1401; *EEOC v. Sperry Corp.*, 852 F.2d at 507. Further, the court finds that the plaintiff has failed to demonstrate that the justification proffered by the defendant for his discharge is a pretext for age discrimination, and hence has failed to carry his ultimate burden of proof that age was a determining factor in the decision to dis-

charge plaintiff. *See Whalen v. Unit Rig, Inc.*, 974 F.2d at 1252 (quoting *Lucas v. Dover Corp.*). Plaintiff has presented absolutely no persuasive evidence to support his allegation that defendant discharged him on the basis of his age.

### *CONCLUSION*

Because plaintiff has failed to establish by a preponderance of evidence the "active deception" on the part of the defendant to warrant invocation of the doctrine of equitable tolling, his claim must be denied as time barred by 29 U.S.C. § 626(d)(2). In the alternative, the plaintiff has failed to demonstrate that the defendant's reasons for discharging him were a mere pretext for age discrimination.

**IT IS BY THE COURT THEREFORE ORDERED** that judgment shall be entered for the defendant as a matter of law.