Allen **REDLICH**, Plaintiff,

v.

The **ALBANY LAW SCHOOL OF UNION UNIVERSITY**, Defendant.

No. 94–CV–1021.

United States District Court, N.D. New York.

Oct. 3, 1995.

Kingsley and Towne, P.C., Albany, New York (James T. Towne, Jr., of counsel), for plaintiff.

Bond, Schoeneck & King, LLP, Albany, New York (Richard C. Heffern, Gregory J. Champion, of counsel), for defendant.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

## I. BACKGROUND

Plaintiff, Allen Redlich,[1] brings this action against the defendant, The Albany Law School of Union University ("Albany Law School"), pursuant to the Americans With Disabilities Act (ADA) (42 U.S.C. §§ 12101–12213), the Rehabilitation Act of 1973 (29 U.S.C. § 706(8)(B)), New York Executive Law § 296(1), and state Contract law.

The plaintiff alleges that the defendant discriminated against him on the basis of his disability, and breached an employment contract. The plaintiff had suffered a stroke in January 1983, which impaired the use of his left leg, arm, and hand. Plaintiff alleges that from that time until the present, Albany Law School granted him smaller annual raises than those given to comparably tenured faculty. He alleges that this practice was not on the basis of objective criteria evenly applied to all faculty members, but on the basis of a discriminatory bias against him as a disabled individual. Plaintiff alleges that he did not discover the disparity in salary increases until sometime in March of 1994, due to the defendant's policy of absolute secrecy with respect to faculty salaries.

The defendants argue that the salary increments reflect the unbiased assessment of the plaintiff's performance, seniority, and other factors as determined by the then deans[2] of the school. In particular the deans stressed that the primary factors considered were scholarship, teaching, and community service, and state that the plaintiff ranked in the lower one-third of all faculty with respect to the criteria used to determine the amount of raise to be given. The defendant admits that there was a general awareness of the plaintiff's physical condition, but points to the fact that the plaintiff taught a full load of classes, *inter alia,* as evidence that he did not have any substantial limitation on his major life activities.

The defendant also argues that the plaintiff's federal and state discrimination based claims are time-barred. In particular, the defendant argues that the plaintiff's ADA claim is time-barred because he failed to file a claim with the New York State Division of Human Rights, and failed to file a claim with the Equal Employment Opportunity Administration within the prescribed time period. In addition, the defendant argues that the

---

1. Now Deceased.

2. 1987–88 through 1991–1992 faculty salary increases determined by Dean Martin H. Belsky; 1992–1993 faculty salary increases determined by Dean John T. Baker.

plaintiff was aware of the acts, for which he has now commenced this action, more than three years ago. Accordingly, the defendant argues that the plaintiff's claims brought pursuant to the Rehabilitation Act and the New York Executive Law are time-barred, and must be dismissed.

## II. DISCUSSION

### A. Standard For Summary Judgment

██ The standard for granting a motion for summary judgment is well-settled. Summary judgment is appropriate when no genuine issues of material fact exist, and thus the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The movant bears the initial burden of showing the Court that, on the evidence before it, there is no genuine issue of material fact. *See, Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmovant must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.Proc. 56(e). There must be more than a "metaphysical doubt as to the material facts." *Delaware & Hudson Rwy. Co. v. Conrail Corp.,* 902 F.2d 174, 178 (2d Cir.1990) (*quoting, Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986)). In addition, all ambiguities must be weighed in favor of the non-moving party, and all reasonable inferences drawn against the moving party. *See Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989); *see also, Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355. "Only when reasonable minds could not differ as to the import of the evidence is summary judgement proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991) *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). It is with the foregoing standards in mind that the Court turns to the issues presented.

### B. Plaintiff's Claim Under The Americans With Disabilities Act (ADA)

There are two crucial issues presented with respect to the plaintiff's ADA claim: (1) whether the plaintiff has complied with the procedural prerequisites to commencing an action in a federal court alleging a violation of the ADA, or whether the plaintiff is excused from strict compliance with such procedures, and, assuming compliance or excuse, (2) whether the plaintiff comes within the scope of the statute, such that even if properly in federal court, the plaintiff could maintain an ADA claim at all.

#### 1. Procedural Prerequisites

██ The ADA is a federal statute which prohibits discrimination in private employment against those who are disabled, or who are perceived as disabled. 42 U.S.C. s 12102, et seq. The ADA protects individuals who can show that they suffer an impairment that substantially limits a major life activity. 42 U.S.C. s 12112(a). ADA § 107, specifically incorporates by reference the enforcement mechanisms set out in Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 12117(a). Title VII requires a claimant who wishes to bring a suit in federal court, inter alia, to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within one hundred eighty (180) days "after the alleged unlawful employment practice occurred," or within three hundred 300 days of the alleged discrimination if the claimant "has initially instituted proceedings with a State or local agency with authority to grant or seek relief ... or to institute criminal proceedings ..." 42 U.S.C. s 2000e–5(e) (300 day period is the available filing period for claimants in New York which has its own fair employment laws). Title VII further provides that "a civil action may be brought against the respondent named in the charge ... by the person claiming to be aggrieved" within 90 days of receipt of what is known as a "right-to-sue" letter from the EEOC. 42 U.S.C. s 2000e–5(f)(1). Failure to file before this time elapses requires the court to dismiss a subsequent lawsuit as untimely. *See, e.g., Delaware State College v. Ricks,* 449 U.S. 250, 256, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980); *Smith v. McClammy,* 740 F.2d 925, 927 (11th Cir.1984).

██ The U.S. Supreme Court, however, has held that complying with the 300–day EEOC charge filing period is not a jurisdictional prerequisite for a Title VII court suit;

rather, the filing period acts as a statute of limitations and is subject to waiver, estoppel, and/or equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 392–393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). Nevertheless, the Second Circuit has held that "[w]hen a plaintiff fails to file a timely charge with the EEOC, the claim is time-barred.... A district court only has jurisdiction to hear [such] claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Dep't of Housing Preservation & Dev.*, 990 F.2d 1397, 1401 (2d Cir.1993) (in context of a Title VII case) (citations omitted). Furthermore, notwithstanding the suggestion by the *Zipes* Court that the failure to file an EEOC claim is not fatal to a civil action, a plaintiff may not forego filing a complaint with the EEOC altogether. *See Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152 n. 6, 104 S.Ct. 1723, 1726 n. 6, 80 L.Ed.2d 196 (1984) (per curiam). "In other words, although the timeliness of the filing with the EEOC is in the nature of a statute of limitations, the act of filing is a jurisdictional prerequisite to the commencement of a Title VII suit in the federal courts. Thus, absent plaintiff's filing of a complaint with the EEOC and [his] receipt of a right to sue letter," the Court lacks subject matter jurisdiction to entertain plaintiff's ADA claim. *Bent v. Mount Sinai Medical Center*, 882 F.Supp. 353, 355 (S.D.N.Y.1995) (Title VII claim) (citations omitted); *see also, Donnelly–Keller v. H & R Block, Inc.*, 1992 WL 218282 (N.D.N.Y.1992), *aff'd,* 992 F.2d 319 (2d Cir.1993) (Title VII claim); *Miller v. International Tel. & Tel. Corp.*, 755 F.2d 20 (2d Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985) (ADEA claim); *Bradley v. Consolidated Edison Co.*, 657 F.Supp. 197, 202 (S.D.N.Y.1987); *Stutz v. Depository Trust Co.*, 497 F.Supp. 654, 656 (S.D.N.Y.1980). Accordingly, the Court must dismiss plaintiff's ADA claim with prejudice, unless time remains in which plaintiff can file a claim with the EEOC and receive a right to sue letter. Only if these events occur, may the plaintiff return to this forum and continue to prosecute this suit.

## 2. Equitable Tolling

■ As an initial matter, there are no facts before the Court to show that the plaintiff has filed a claim with the EEOC. Plaintiff has also failed to file a claim with the appropriate state agency. Plaintiff admits to learning of the defendant's alleged discriminatory practices at some time during March of 1994. Thus, regardless of whether the plaintiff is held to the one hundred eighty (180) day or three hundred (300) day period within which he had to file a claim with the EEOC, the plaintiff is precluded from filing such a claim now unless, as the plaintiff argues, he is entitled to the benefit of equitable tolling.

■ Under the doctrine of equitable tolling, in its broadest sense, "a statute of limitations does not run against a plaintiff who is unaware of his cause of action." *Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir. 1985) (*quoting, Long v. Abbott Mortgage Corp.*, 459 F.Supp. 108, 113 (D.Conn.1978)). Courts have generally reserved the remedy of equitable tolling for circumstances where the error was not the fault of the plaintiff. "[A] complainant may be allowed to file his or her claim outside the applicable limitations period if, because of some action on the defendant's part, the complainant was *unaware* that the cause of action existed." *Long v. Frank*, 22 F.3d 54, 58 (2d Cir.1994), *cert. denied, Long v. Runyon,* —— U.S. ——, 115 S.Ct. 938, 130 L.Ed.2d 883 (1995) (emphasis added); *see also, Dillman v. Combustion Eng'g, Inc.*, 784 F.2d 57, 60 (2d Cir. 1986). The Supreme Court has held that equitable tolling is justified where the notice from the EEOC is inadequate, where a motion for appointment of counsel is pending, where a court has led the plaintiff to believe all statutory requirements for bringing a suit have been satisfied, or where the defendant's conduct lulls the plaintiff into inaction. *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 1725, 80 L.Ed.2d 196 (1984) (per curiam) (citations omitted). "In the employment discrimination context, courts have applied this doctrine in situations in which the defendant's conduct

has prevented the plaintiff from learning of the existence of her cause of action" (citation omitted) ... "or in which the plaintiff has relied on incorrect advice concerning the appropriate filing deadlines or the need to file at all." *Donnelly–Keller v. H & R Block, Inc.*, 1992 WL 218282 (N.D.N.Y.1992). In the instant matter plaintiff has not presented the Court with any recognized justification to equitably toll the limitations period.

Plaintiff simply states that the plaintiff was unaware of the alleged discrimination until March of 1994 and, was not "fully" knowledgeable as to the extent of the wage disparity until engaging in discovery in this action. *See* Plaintiff's Memorandum Of Law In Opposition To Defendant's Motion To Dismiss, Point II at 7. Plaintiff then argues that as a result of those facts, the defense of the statute of limitations is unavailable to the defendant. Plaintiff points to no action on the part of the defendant that concealed knowledge of his rights, nor does he make a showing of any other factor than unawareness to support a claim that the filing period should be equitably tolled.

■ As the Court has already set forth, a critical event in the analysis of equitable tolling is the awareness of a claim on the part of the plaintiff, not whether all the facts obtainable in discovery have been made available. · *See Long*, 22 F.3d at 58; *see also, Dillman*, 784 F.2d at 60. Accordingly, since the plaintiff was aware of his claim in March of 1994, the latest that the plaintiff could have filed a claim with the EEOC, assuming that he filed a claim with the appropriate state agency and counting from the last day in March, would be January 25, 1995.[3] Thus, since the plaintiff has not yet made any agency filing with respect to this claim, and since he may not make such a filing at this time, the plaintiff's claim pursuant to the ADA is dismissed. The Court need not address the issue of whether the plaintiff falls within the class of individuals covered under the ADA.

### C. Plaintiff's Claim Under the Rehabilitation Act

#### 1. Timeliness

The defendant concedes that the limitations period applicable to a claim brought under § 504 of the Rehabilitation Act is the state limitations period applicable to personal injury actions. *See Morse v. Univ. of Vermont*, 973 F.2d 122, 127 (2d Cir.1992) (applying state statute of limitations since no limitations period set forth in the federal statute). The New York statute of limitations for personal injury actions is three years. N.Y.Civ.Prac.L & R § 214(5).

The defendant alleges that the plaintiff knew of the salary increases he received during the time periods relevant to this action. The defendant also alleges that the plaintiff complained to the then Dean at Albany Law School about those raises. The defendant argues that those facts show an awareness of his claim at some point well beyond the limitations period, such that the claim under the Rehabilitation Act should be dismissed.

■ The Court reiterates that on a summary judgment motion all inferences must be drawn in favor of the non-moving party. *See Ramseur*, 865 F.2d at 465; *see also, Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355. The defendant would have the Court infer that the expression of dissatisfaction at salary increases was due to a belief that such salary increments were affected by a discriminatory bias. However, the Court finds that a more reasonable inference is simple dissatisfaction. Based on the facts presented in this case, the plaintiff first learned of the alleged discriminatory animus of the defendant in March 1994. Accordingly, the claim under the Rehabilitation Act is timely.

#### 2. Status Of The Plaintiff

■ The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of his ... disability ... be subjected to discrimina-

---

**3.** Plaintiff's counsel argues that the plaintiff's death on February 16, 1995, entitles his representative to commence an action within one year of his death. N.Y.Civ.Prac.L & R § 210(a). However, the plaintiff's death must have occurred during the time within which he was entitled to commence an action. *Id.* As set forth herein, that time passed on January 25, 1995.

tion under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). In a suit brought under the Rehabilitation Act, the plaintiff "bears the initial burden of establishing a *prima facie* case under the Act. The burden then shifts to the employer. If the employer asserts a neutral reason, unrelated to plaintiff's handicap, for its employment decision, then its burden is to 'articulate a legitimate non-discriminatory reason for'" the employment decision. *Heilweil v. Mount Sinai Hospital*, 32 F.3d 718, 722 (2d Cir.1994), *cert. denied*, 115 S.Ct. 1095 (1995) (citation omitted).

■ To make out a *prima facie* case of discrimination under the Act, the plaintiff must show: "1) [he] is a handicapped [or disabled] person under the Act; 2) [he] is otherwise qualified to perform her job; 3) [he] was discharged because of [his] handicap [or disability]; and 4) the employer is a recipient of Federal financial assistance." *Id.*, (citations omitted). The claim must fail if the plaintiff is unable to establish a factual issue as to any of the elements. *See Id.; see also, Sedor v. Frank*, 42 F.3d 741, 746 (2d Cir.1994), *cert. denied, Sedor v. Runyon*, —— U.S. ——, 115 S.Ct. 2279, 132 L.Ed.2d 283 (1995). The Court's discussion here is limited to the first element.

The Rehabilitation Act defines an "individual with a disability" to mean "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such impairment, or (iii) is regarded as having such impairment." 29 U.S.C. § 706(8)(B). Thus this Court first determines whether the plaintiff has, has a record of, or is perceived as having a physical or mental impairment. Then the Court must determine if the plaintiff has shown that such impairment "substantially limits" a major life activity.

### a. Physical Impairment

The first area of inquiry when determining if the plaintiff is a disabled person under the Act is whether the plaintiff "has a physical or mental impairment." *Sedor*, 42 F.3d at 746. Following the lead of the Supreme Court in

*School Board of Nassau County v. Arline*,[4] this Circuit has looked to the Department of Health and Human Services regulations for guidance in determining whether a particular plaintiff is disabled within the meaning of the Rehabilitation Act. *Heilweil*, 32 F.3d at 718. The regulations define "physical impairment" broadly, as "(A) any physiological disorder or condition, ... or anatomical loss affecting one or more of the following body systems (list omitted) ... or (B) any mental or psychological disorder ..." 45 C.F.R. § 84.3(j)(2)(i); 45 C.F.R. § 605.3(j)(2)(i); 29 C.F.R. § 1630.2(h)(1)–(2).

■ The plaintiff suffered a stroke in January, 1983, which necessitated a medical leave of absence for a number of months. In addition, the plaintiff alleges that he lost all use of the left hand, arm, and leg, and walked with a limp. The Court finds that plaintiff had a physical impairment and/or record of a physical impairment such that the Court must now determine whether there is a material factual issue as to whether such impairment substantially limited a major life activity.

### b. Major Life Activity

Under the Department of Health and Human Services regulations, "major life activity" is defined as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii); 45 C.F.R. § 605.3(j)(2)(ii); 29 C.F.R. § 1630.2(h)(2)(i). The relevant "major life activity" at issue in this case is "working." The Equal Employment Provisions of the ADA define the term "substantially limits" with respect to working as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i).

■ Looking to the facts of this case, and even construing them in a light most favor-

4. 480 U.S. 273, 279, 107 S.Ct. 1123, 1127, 94    L.Ed.2d 307 (1987).

able to the plaintiff, the Court can find no material factual issue as to whether the physical impairment of the plaintiff *substantially* affected the major life activity of working, such that he was significantly restricted in his ability to perform the class of job in which he was engaged, that of law professor. Most telling to the Court are the admissions contained in the complaint and the allegations of those submitting affidavits on the plaintiff's behalf. In particular, Rita Redlich, plaintiff's widow, states, in support of the plaintiff's ability to perform at work, that he was published in three law journals during the relevant time period. Moreover, the plaintiff himself admits in his complaint to teaching a full load of cases and participating in a number of positions relating to faculty governance.[5] Plaintiff even described his performance as superior during the relevant time period. The plaintiff also admits that there was no impairment of his ability to work as a law professor, after his rehabilitation, much less a substantial impairment. Thus, it is clear to the Court that the plaintiff has raised no material question of fact as to whether his physical impairment substantially affected a major life activity.

### c. Regarded As Having An Impairment

Although not raised by the parties, the Court will consider whether there is a material factual issue as to whether the plaintiff was regarded by the defendant as having an impairment. A disabled person may be defined as one who "is regarded as having a [physical or mental] impairment." 45 C.F.R. § 84.3(j)(2)(iv); 45 C.F.R. § 605.3(j)(2)(iv); 29 C.F.R. § 1630.2(g)(3). The regulations define that phrase to mean having "a physical or mental impairment that does not substantially limit major life activities but is treated by [the employer] as constituting such limitation." 29 C.F.R. § 1630.2(*l*)(1).

There is no question that the defendant knew of the plaintiff's physical impairment. As set forth in the defendant's supporting affidavits, each Dean of Albany Law School

stated that he was aware of the basic physical limitations of the plaintiff, i.e., left side impairment and walking with a limp. However, it is also clear that the defendant took no actions to accommodate any allegedly perceived physical impairment, other than to excuse the plaintiff from the graduation procession, and it is also clear that the plaintiff made no such requests.

■ The Supreme Court has interpreted the relevant language to this discussion to relate to situations where the employee's "impairment might not diminish a person's physical or mental capabilities, but could nevertheless substantially limit that person's ability to work as a result of the negative reactions of others." *Arline,* 480 U.S. at 283, 107 S.Ct. at 1129. The Court continued by explaining that it was the intent of Congress to bring within the scope of the statute actions taken based on "myths, fears, and stereotypes" associated with disabilities. *Id.* at 284, 107 S.Ct. at 1129. Any inference of such a motivation for allegedly wrongful employment decisions may be rebutted by the employer "articulat[ing] a non-discriminatory reason for the employment action." 29 C.F.R. Pt. 1630 App. § 1630.2(*l*). This Court notes that "[m]any impairments do not impact an individual's life to the degree that they constitute disabling impairments." 29 C.F.R. Pt. 1630 App. § 1630.2(j). Moreover, "[a]n employer's belief that an employee is unable to perform one task with an adequate safety margin does not establish per se that the employer regards the employee as having a substantial limitation on his ability to work in general." *Chandler v. City of Dallas,* 2 F.3d 1385, 1393 (5th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994); *see also, Daley v. Koch,* 892 F.2d 212, 215 (2d Cir.1989); *Forrisi v. Bowen,* 794 F.2d 931, 935 (4th Cir.1986). Finally, in the cases where a court found that an employer had regarded the employee as substantially limited in a major life activity, the pivotal event usually involved the termi-

---

5. Chair of the Faculty Budget Committee, Chair of the Faculty Long Range Planning Committee, member of the Faculty Affairs Committee, Curriculum Committee, Academic Affairs Committee, Student Affairs Committee, Ad Hoc Committee to Evaluate the Clinical Program, Non–Tenure Track Evaluation Committee, Continuing Legal Education Committee, and the Enrichment Committee.

nation of employment. *See, e.g., Arline,* 480 U.S. 273, 107 S.Ct. 1123.

■ The defendant has articulated a valid non-discriminatory reason for its employment decisions regarding the incremental salary increases of the plaintiff. Each Dean followed a long-standing procedure. The Albany Law School Board of Trustees set the school's preliminary budget, which included a pool of money to be utilized for faculty salaries. The Dean then determined each faculty member's salary based on an assessment of factors. The factors were set forth in the Faculty Handbook, and included: merit, length of service, rank, seniority, regional living costs, inflation, salaries at comparable schools, and the ability of the institution to pay. Chief among the factors was merit, which included teaching, scholarship, and community service. The Deans who determined the plaintiff's salary during the relevant time period cited a need for better preparation for class, the employment of improved teaching techniques, weak student evaluations, inadequate community service involvement, and insufficient scholarship production. Deans Belsky and Baker ranked the plaintiff in the lower third of all faculty for each year, and his salary increases were in accordance with their assessment of the plaintiff.[6] Thus, the defendant has presented a reasonable non-discriminatory basis for the employment decisions taken with regard to the plaintiff. Accordingly, the plaintiff has failed to raise a material factual issue as to whether he was regarded by the defendant as substantially limited in a major life activity.

### D. State Law Claims

The only remaining claims in this case are based on alleged violations of New York state law. This court may exercise jurisdiction over state law claims if, in its discretion, it decides to exercise supplemental jurisdiction. Pursuant to 28 U.S.C. § 1367(a), the exercise of supplemental jurisdiction is appropriate "in any civil action of which the district courts have original jurisdiction," and wherein the state claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a) (1990 & Supp.). A district court, however, "may decline to exercise supplemental jurisdiction over a claim ..." for any one of four enumerated exceptions set forth in the statute. 28 U.S.C. § 1367(c).

■ The relevant exception to the exercise of supplemental jurisdiction in this case is that this court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Thus, since all the federal claims have been dismissed, this court declines to exercise supplemental jurisdiction over the remaining state law claims, and dismisses those claims, without reaching the merits, for lack of subject matter jurisdiction.

### III. CONCLUSION

In sum, the Court GRANTS defendant's motion for summary judgment as to the claims brought pursuant to the ADA and the Rehabilitation Act, and the Court declines to exercise supplemental jurisdiction as to the plaintiff's state law claims.

**IT IS SO ORDERED.**

---

**6.** It should be noted that although the plaintiff's raises were below the average for all tenured and tenure-track non-administrative faculty, plaintiff never failed to receive a raise and was never given the lowest percentage salary increase.