**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 5 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LAURA J. McINTIRE,

      Plaintiff-Appellant.

v.

TULSA COUNTY SHERIFF, Board of
County Commissioners of the County
of Tulsa,

      Defendant-Appellee.

   and

DOUG THOMAS, an individual,

      Defendant.

No. 03-5030
(Northern District of Oklahoma)
(D.C. No. 01-CV-113-P)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

**I.    Introduction**

Plaintiff, Laura McIntire, appeals from the grant of summary judgment in favor of defendant, the Board of County Commissioners of the County of Tulsa, Oklahoma (the "Board"). As a result of a reduction in force, McIntire was terminated from her position as a clerk in the Tulsa County Sheriff's Office (the "Sheriff's Office"). She received a letter notifying her of the termination on March 5, 1999, but remained in the position until August 31, 1999. McIntire filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on June 2, 2002. She eventually filed a lawsuit against the Board in federal court, alleging that she was subjected to a sexually hostile work environment and that her termination was motivated by gender discrimination in violation of Title VII of the Civil Rights Act of 1964.

The district court granted summary judgment in favor of the Board on McIntire's hostile work environment claim, concluding the claim was barred by the statute of limitations because McIntire had failed to identify at least one related incident of discrimination occurring within the 300 days before she filed her charge with the EEOC. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002); 42 U.S.C. § 2000e-5(e)(1). Several months later, the district court granted summary judgment in favor of the Board on McIntire's remaining

gender discrimination claim. The court concluded this claim was also time barred.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms** the grant of summary judgment to the Board on both claims asserted by McIntire.

## II.    Factual Background

McIntire was employed for seventeen years by the Sheriff's Office. In 1995, the citizens of Tulsa County passed a sales tax proposition to fund the construction of a new jail and the County entered into a contract with Corrections Corporation of America ("CCA") to operate and manage the new jail. *See Tulsa County Deputy Sheriff's Fraternal Order of Police v. Bd. of County Comm'rs*, 959 P.2d 979, 981 (Okla. 1998). Stanley Glanz, the Tulsa County Sheriff, stated in an affidavit that the privatization of the new jail resulted in the elimination of 200 full-time positions with the Sheriff's Office. According to Glanz, many of the individuals holding those positions were hired by CCA to work in the new jail.

McIntire, who held the position of Clerk III, received a termination letter from Sheriff Glanz on March 5, 1999. She was subsequently informed that her final day of employment with the Sheriff's Office would be August 31, 1999. McIntire testified that in her last month of employment with the Sheriff's Office, she was asked to train several individuals, all female, to perform her job duties. On August 30, 1999, however, a male employee, Josh Turley, approached

McIntire and asked her to train him to perform her job. Turley testified that the training was completed in approximately three and one half hours. Turley testified that for several months he performed McIntire's former duties in addition to his other duties.[1] He further testified that McIntire's former duties are now either performed by other individuals or have been supplanted by the implementation of a computer program by the Sheriff's Office.

Less than one week before she left her position with the Sheriff's Office, McIntire contacted the Tulsa County Sheriff's Office of Internal Affairs and made an official complaint against Deputy Doug Thomas. McIntire alleged that on August 5, 1999, Thomas grabbed her hand and forcibly used it to rub his penis.[2] McIntire testified in her deposition that it was not uncommon for her co-workers to engage in sexually explicit behavior in her workplace but that prior to August

[1]Although she has not included the relevant portion of Turley's deposition testimony in the record, McIntire asserts that Turley testified he spent between seven and ten hours per day performing the tasks she formerly performed. She further asserts, again without support in the record, that Turley spent no more than two and one half hours per week performing duties related to his position as a Crime Scene Technician.

[2]The Sheriff's Office investigated the complaint but determined that Thomas' radio traffic history showed he was not at the same location as McIntire when the alleged incident occurred. Because the Sheriff's Office could not substantiate McIntire's claim, it took no further action. McIntire has included an undated, hand-written document in the record which now indicates that the incident occurred on August 6, 1999.

25, 1999, she had never reported any incidents of sexual harassment to any supervisor or upper-level personnel in the Sheriff's Office.

McIntire filed a charge with the EEOC on June 2, 2000, raising claims of gender discrimination and hostile work environment. She thereafter filed a complaint in federal district court raising, *inter alia*, the same two claims. On September 19, 2002, the district court granted the Board's motion for summary judgment on the hostile work environment claim, concluding that the claim was time barred because McIntire failed to identify "at least one discriminatory act" that occurred during the 300-day period before she filed the charge with the EEOC. *See* 42 U.S.C. § 2000e-5(e)(1); *Morgan*, 536 U.S. at 122. After additional discovery was conducted, the district court granted summary judgment to the Board on McIntire's remaining gender discrimination claim. The court concluded that claim was also time barred. McIntire then brought this appeal.

## III. Discussion

### A. *Hostile Work Environment Claim*

This court reviews the grant of summary judgment *de novo*, applying the same standard employed by the district court. *Boyer v. Cordant Techs., Inc.*, 316 F.3d 1137, 1138 (10th Cir. 2003). Summary judgment is appropriate if no genuine issue as to any material fact is in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When the moving party

does not bear the ultimate burden of persuasion at trial, it may satisfy its burden of showing that no genuine issue of material fact exists by pointing to "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998).

McIntire alleged in her complaint that she was subjected to a hostile work environment while employed by the Sheriff's Office. She asserts that during her seventeen-year tenure she was "frequently subjected to humiliating, demeaning, and degrading comments and innuendo of a sexual nature" by her "male co-workers and superiors." McIntire's claim is time barred unless she raised it in an EEOC charge filed within 300 days of any act that was part of the hostile work environment. *Morgan*, 536 U.S. at 122 ("A charge alleging a hostile work environment claim, however, will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period.").

Even assuming that the alleged incident involving Deputy Thomas was part of a single unlawful employment practice and that it took place on August 6, 1999, McIntire filed her hostile work environment charge with the EEOC more than 300 days after the incident occurred.[3] McIntire, however, asserts that she has identified two additional incidents which occurred within the 300-day period

---

[3]McIntire does not dispute that the year 2000 was a leap year.

and which were part of the hostile work environment. Specifically, McIntire states that she received hang-up calls at her home after she lodged her complaint against Deputy Thomas and argues that she suffered humiliation when she was asked to train Turley on her last day of work.

In her deposition, McIntire testified that she received between three and four hang-up calls at home after August 25, 1999. She further testified that she was not sure of the identity of the caller, but that she "assumed" it was Deputy Thomas. She stated the caller "was somebody playing around or it could have been [Thomas]." She then argues that these calls were additional acts that were part of the hostile work environment. *See Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 409-10 (1st Cir. 2002) (holding that non-workplace conduct was admissible as evidence of "the severity and pervasiveness of the hostility in the workplace"). It is unnecessary for us to address McIntire's argument that non-workplace conduct is relevant in any way to a hostile work environment claim, because her unsupported and equivocal testimony is wholly insufficient to create a genuine issue of material fact on the question of whether the hang-up calls she received at her home were placed by Deputy Thomas. *See Adler*, 144 F.3d at 675. Accordingly, she cannot demonstrate that the hang-up calls were part of the hostile work environment and, therefore, cannot rely on them to extend the 300-day filing period beyond August 6, 1999. *See id*. at 670.

We further conclude that even viewing the facts in the light most favorable to McIntire, she cannot demonstrate that being asked to train Turley was an act that was part of the alleged hostile work environment. *See Morgan*, 536 U.S. at 122. McIntire was one of approximately 200 individuals whose jobs were eliminated when the Tulsa County jail was privatized. She was approached by Turley on her last day of work and testified that she voluntarily created a list of her duties for him without being asked to do so. She further testified that Turley never engaged in the harassing conduct she alleges was prevalent in her workplace. Under these circumstances, McIntire cannot show that being asked to train Turley on August has any relation to the hostile work environment practice she alleged occurred over the course of her seventeen-year tenure with the Sheriff's Office.

Because McIntire has failed to specifically identify an act occurring within 300 days of the filing of her charge with the EEOC that is part of the hostile work environment of which she complains, the district court properly concluded that the hostile work environment claim was time barred and the grant of summary judgment to the Board on that claim is **affirmed**.

B.    *Gender Discrimination Claim*

In addition to her hostile work environment claim, McIntire also alleged that the Board unlawfully discriminated against her on the basis of her sex when

it terminated her employment. The district court granted summary judgment to the Board on this claim, concluding that it, too, was barred because the EEOC charge was not timely filed. *See Morgan*, 536 U.S. at 122 (holding that plaintiff raising a claim involving a discrete discriminatory act must file her charge within 300 days of such act). Further, the court refused to equitably toll the limitations period. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (holding that "filing a timely charge of discrimination with the EEOC is . . . subject to waiver, estoppel, and equitable tolling").

In this appeal, McIntire does not challenge the district court's conclusion that the 300-day period for the discrimination claim began to run on March 5, 1999, the day she received a termination letter from Sheriff Glanz. *Delaware State College v. Ricks*, 449 U.S. 250, 258-59 (1980) (holding that the date to file a charge with the EEOC begins to run when the employee is informed of the discrete act that forms the basis for the claim, not the date the effects of that act are felt); *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 558-59 (10th Cir. 1994) ("[I]t is knowledge of the adverse employment decision itself that triggers the running of the statute of limitations."). Instead, she argues that the district court erred when it refused to equitably toll the limitations period.

This court reviews a district court's refusal to apply equitable tolling for an abuse of discretion. *Harms v. IRS*, 321 F.3d 1001, 1006 (10th Cir. 2003). The

Supreme Court has cautioned that equitable exceptions to procedural requirements should be "applied sparingly." *Morgan*, 536 U.S. at 113; *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984). This court has held that equitable tolling may be appropriate "where the defendant has actively misled the plaintiff respecting the cause of action, or where the plaintiff has in some extraordinary way been prevented from asserting his rights." *Cottrell v. Newspaper Agency Corp.*, 590 F.2d 836, 838 (10th Cir. 1979) (quotation omitted).

McIntire first argues she was not aware that she had a viable gender discrimination claim prior to August 31, 1999, because the Board actively misled her by articulating a pretextual reason for her termination. McIntire's argument, however, has been previously rejected by this court. *Hulsey*, 43 F.3d at 558. In *Hulsey*, this court adopted the reasoning of the Fourth Circuit and concluded that allegations of pretext alone are insufficient to support a request for equitable tolling:

> Shorn of its pejorative rhetoric, this contention amounts to little more than a claim that the company's proffered reasons for its adverse employment action were pretextual. The fact that a company's explanation might be disputable for purposes of summary judgment on underlying discrimination claim is not dispositive of the limitations issue, however. If equitable tolling applied every time an employer advanced a non-discriminatory reason for its employment decisions, it would be tantamount to asserting that an employer is equitably estopped whenever it does not disclose a violation of the statute. If this were the case, the [300]-day period for filing a charge would have little meaning.

-10-

*Id.* (quoting *Olson v. Mobil Oil Corp.*, 904 F.2d 198, 203 (4th Cir. 1990) (further quotation omitted)).

McIntire also argues that the Board prevented her from asserting her rights in a timely manner by concealing the fact that her job was not eliminated, but was given to a younger male. She asserts that these facts were essential to her claim, but she was not aware of them until she was asked to train Turley on August 30, 1999. *See Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1235 (10th Cir. 1999) ("Equitable tolling, like equitable estoppel, provides for tolling of the statute of limitations when a plaintiff's unawareness of his ability to bring a claim–either unawareness of the facts necessary to support a discrimination charge or unawareness of his legal rights–is due to defendant's misconduct." (quotation and alteration omitted)). Thus, she argues that she is entitled to equitable tolling because she was prevented from asserting her rights in a timely manner. The district court rejected this argument, concluding that the allegations McIntire set forth when making her hostile work environment claim demonstrated that she had formed a belief that gender discrimination was prevalent in her workplace prior to her own termination on March 5, 1999. Consequently, the court concluded she was on notice to inquire further into the possibility that her discharge was motivated by unlawful gender discrimination.

We find no abuse of discretion in the district court's approach. This court has previously held that one way a plaintiff may meet her prima facie burden is by demonstrating that her job remained available after her discharge.[4] *Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1175 (10th Cir. 1996); *see also Perry v. Woodward*, 199 F.3d 1126, 1140 (10th Cir. 1999) (holding that a plaintiff may make out a prima facie case of race discrimination without demonstrating that the employee who replaced her does not share her protected attribute). McIntire testified that after she received her termination notice she was asked to train several other Sheriff's Office employees to assume all her duties. Thus, she was aware that her job had not been eliminated before she was asked to train Turley. Further, McIntire alleged in her complaint that her workplace was the scene of "widespread discrimination against women." Thus, the undisputed evidence demonstrates that McIntire was aware of the facts necessary to support her gender discrimination charge before August 31, 1999. *See Purrington v. Univ. of Utah*, 996 F.2d 1025, 1030-31 (10th Cir. 1993) ("[P]rinciples of equity and fairness do

---

[4]We apply the prima facie test applicable to wrongful termination claims because McIntire uses this test and the Board does not dispute its application. We note, however, that the prima facie burden applicable in reduction-in-force cases may be the more appropriate test. *See Juarez v. ACS Gov't Solutions Group, Inc.*, 314 F.3d 1243, 1245-46 (10th Cir. 2003) (holding that a plaintiff alleging intentional race discrimination involving a RIF can make out the fourth element of her prima facie case "by showing that the employer could have retained plaintiff but instead chose to keep someone of a different race").

not warrant tolling when, as here, the plaintiff knowingly failed to act with due diligence."). Accordingly, the district court did not abuse its discretion when it denied McIntire's request for equitable tolling.

## IV. Conclusion

The district court properly granted summary judgment to the Board on McIntire's gender discrimination and hostile work environment claims. Neither claim was timely filed and McIntire has failed to demonstrate an entitlement to equitable tolling. The judgment of the district court granting summary judgment to the Board is **affirmed**.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge